WILLIAM GOLDIE *et al.*

*v.*

AUGUST WERNER.

*Filed at Ottawa, June 19, 1894.*

1. MASTER AND SERVANT—*master's liability for injury to servant from defective appliances.* A servant, in order to recover for an injury for defects in the appliances in the business, is required to establish three propositions: (1) That the appliances were defective; (2) that the master had notice thereof, or knowledge, or ought to have had, and (3) that the servant did not know of the defect, and had not equal means of knowing with the master.

2. To the extent of the discharge by a foreman or other superior servant of those duties which the master owes to his servants, such foreman, or other superior servant, stands in the place of the master; and the supplying of safe machinery, tools and appliances, with which to work, which latter included the joist and scaffold upon which to work, is one of the duties which the master owes to his servants.

3. NEGLIGENCE—*whether of a fellow-servant—a question of fact.* In an action by a servant against his employer to recover for a personal injury, the question whether the negligence of the foreman of the master was the negligence of a fellow-servant, or the negligence of the master, of whom the foreman was the direct representative, is a question of fact for the jury, which is conclusively settled by the judgment ·of the Appellate Court affirming the judgment of the trial court.

4. SAME—*excessive damages—a question of fact.* The amount of damages awarded in a common law action is a question of fact, and the judgments of the lower courts, in regard thereto, are final and conclusive.

5. PRACTICE—*directing what the verdict shall be.* A motion to direct the jury to find for the defendant, is tantamount to a motion to exclude

| 151 | 551 |
|-----|-----|
| 158 | 158 |
| 151 | 551 |
| 167 | 563 |
| 68a | 167 |
| 68a | 530 |
| 151 | 551 |
| 170 | 111 |
| 172 | 181 |
| 172 | 320 |
| 151 | 551 |
| 75a | 267 |
| 151 | 551 |
| 78a | 286 |
| 151 | 551 |
| 183 | 290 |
| 183 | 293 |
| 151 | 551 |
| 87a | 127 |
| 87a | 552 |
| 151 | 551 |
| 92a | 1267 |
| 92a | 1312 |
| 151 | 551 |
| f189 | 1 98 |
| 93a | 1216 |
| e93a | 1242 |
| 151 | 551 |
| 94a | 1102 |
| 151 | 551 |
| f191 | 1126 |
| 192 | 2332 |
| 96a | 1291 |
| 151 | 551 |
| 100a | 1376 |
| 101a | 1673 |
| 151 | 551 |
| 104a | 1206 |
| 151 | 551 |
| e203 | 1337 |
| 203 | 1339 |
| 203 | 499 |
| 107a | 1243 |
| 151 | 551 |
| 207 | 3 15 |
| 208 | 619 |
| 151 | 551 |
| 215 | 1433 |

all the plaintiff's evidence.  If the defendant on the denial of such mo-
tion introduces evidence in defense, he will thereby waive all objection
to the action of the court in overruling the motion, and can not assign
error upon such ruling.

6.   Where there is evidence tending to prove the facts necessary to a
recovery by the plaintiff, the court is not authorized to take the case
away from the jury, and direct a verdict for the defendant.  Where the
evidence, given with all legitimate inferences that may be legally and
justifiably drawn therefrom, is insufficient to support a verdict for the
plaintiff, so that if such a verdict be returned it must be set aside, the
court is not bound to submit the case to the jury, but may and should
direct a verdict for the defendant.

7.  PRACTICE IN THE SUPREME COURT—*abandonment of assignments
of error.*   Where counsel fail in their brief and argument in this court
to call attention to any instances in which it is claimed that the trial
court either admitted any improper evidence for the plaintiff, or ex-
cluded any evidence offered by the defendant, or in the giving of in-
structions, assignments of error in that respect must be regarded as
abandoned.

APPEAL from the Appellate Court for the First District;
—heard in that court on appeal from the Superior Court of
Cook County; the Hon. JONAS HUTCHINSON, Judge, pre-
siding.

Messrs. WALKER & EDDY, for the appellants.

Messrs. CASE, HOGAN & CASE, and Mr. SETH F. CREWS,
for the appellee:

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was an action on the case brought by Werner, ap-
pellee, against Goldie *et al.*, appellants, to recover damages
for personal injuries.   The result of a jury trial was a ver-
dict in favor of the plaintiff below, awarding $20,000 dam-
ages; but a *remittitur* of $12,500 being entered by said
plaintiff, the Superior Court of Cook county overruled the
pending motion for a new trial, and rendered judgment in
favor of said plaintiff, and against the defendants below, for
$7,500 damages.

The judgment was affirmed in the Appellate Court, and a further appeal brought the case here.

The declaration alleges, in substance, that plaintiff was in the employ of defendants as a carpenter in the erection of a certain building, and in performance of his duties as such carpenter, and by direction of the foremen and servants of defendants, was required to go upon a certain scaffold made of wood, and it became the duty of defendants to furnish a strong and substantial scaffold which should not break or fall, but defendants negligently permitted the scaffold to remain in a bad and unsafe condition, in that the same was constructed so poorly and defectively that it became dangerous. It became necessary to carry a large piece of timber to a place designated by the foreman, and plaintiff, while assisting in carrying said timber over and upon said scaffold, with all due care, and without any knowledge as to the insufficiency of said scaffolding, the scaffolding gave way, whereby plaintiff fell and was injured.

At the time of the accident, Werner, the plaintiff, was forty-three years of age, and the injuries he received were of a horrible character, and have permanently disabled him from the performance of any physical labor; and from his present condition there will never be any improvement.

The assignments of error made on the record filed in this court are as follows:

1. The court erred in denying defendants' motion to direct a verdict for the defendants at the close of the plaintiff's testimony.

2. The court erred in denying defendants' motion to direct a verdict for the defendants at the close of all the evidence.

3. The court erred in admitting on the trial improper evidence on the part of the plaintiff, over the objections of the defendants.

4. The court erred in refusing to admit on the trial proper evidence offered by the defendants.

5. The court erred in giving to the jury each and all of the instructions asked by the plaintiff.

6. The court erred in refusing to give to the jury each and all of the instructions requested by the defendants.

7. The verdict is contrary to the law and the evidence in the case.

8. The damages awarded are excessive.

9. The court erred in overruling defendants' motion for a new trial, and entering judgment upon the verdict.

10. The Appellate Court erred in affirming the judgment of the court below.

We will consider these several assignments of error, and substantially in the order in which they are made.

1. The first error is not well assigned. The motion of the defendants, made when the plaintiff rested his case, that the court direct the jury to return a verdict in their favor, was overruled and an exception taken. The motion to direct a verdict for the defendants was tantamount to a motion to exclude all the testimony introduced by the plaintiff. Here, after the denial of the motion, the defendants introduced testimony to overcome that which had been produced by the plaintiff. The plaintiff was entitled to the benefit of all evidence introduced by defendants that helped to make out his own case. *Deshler* v. *Beers*, 32 Ill. 368. The defendants did not stand by their motion; but by the course they took waived all objections to the action of the court in overruling their motion, and can not assign error upon the ruling of the court in the premises. *J., A. & N. Railway Co.* v. *Velie*, 140 Ill. 59; *Dunham Towing & Wrecking Co.* v. *Dandelin*, 143 id. 409.

2. The second assignment of error is, that the trial court erred in denying defendants' motion to direct a verdict for the defendants at the close of all the evidence. And the sixth error assigned is, that the court erred in refusing to

give to the jury each and all of the instructions requested
by the defendants. It appears from the record, that the
defendants asked only one instruction which was refused,
and that instruction read as follows: "The court instructs
the jury, that the evidence is insufficient to maintain the
plaintiff's case as charged in his declaration, therefore your
verdict must be for the defendants." It therefore appears
that the second and sixth assignments of error raise iden-
tically the same questions of law, and consequently they
may be considered together.

What, then, is the rule of law that prevails in respect to
the power and duty of a trial court to take a case from the
jury, by directing them, on motion, to return a verdict for
defendants, or by instructing them that their verdict must
be for the defendants?

It was held, in the early case of *Davis* v. *Hoxey*, 1 Scam.
406, that when the evidence tends to prove the issue, the
jury should be left to determine the cause under the evi-
dence offered; and that in such a case the court had no
power to take the case from them, nor to advise them that
the defendant was entitled to their verdict. That decision
was followed in a long line of cases, which it is unnecessary
to cite. We will come down to later decisions of this court.
In *The People* v. *People's Insurance Exchange*, 126 Ill.
466, we said: "We are not here called upon to determine
whether the evidence was sufficient to entitle plaintiff to
recover, or the weight to be given to the evidence, but we
will look to the evidence for the purpose of determining
whether it fairly tended to establish plaintiff's cause of
action, and if it did, then the court erred in taking it from
the jury by the instruction." The rule to be formulated
from the still later cases of *Hamburg-American Packet
Co.* v. *Gattman*, 127 Ill. 598; *C. & N. W. Railway Co.* v.
*Snyder*, 128 id. 655; *Hodges* v. *Bearse*, 129 id. 87, and
*Wight Fire Proofing Co.* v. *Poczekai*, 130 id. 139, is, that
where there is evidence before the jury tending to prove the

facts necessary to a recovery by the plaintiff, the court is not authorized to take the case from the jury and direct a verdict for the defendant. As presenting the law of the matter most favorably for the defendants, but still not inconsistently with the rule as held in the cases cited above, reference may be had to *C. & A. R. R. Co.* v. *Adler*, 129 Ill. 335, where we held, that when the evidence given at the trial, with all legitimate inferences that may be legally and justifiably drawn therefrom, is insufficient to support a verdict for the plaintiff, so that, if such a verdict be returned, it must be set aside, the court is not bound to submit the case to a jury, but may and should direct a verdict for the defendant. What we have thus far said, seems sufficiently to answer the question above propounded, as to the rule of law that prevails in regard to the power and duty of a trial court to take a case from the jury.

The rule of law in respect to the burden of proof that is imposed upon a servant in a suit against his master, for injuries resulting from defective machinery, etc., is there stated in section 414 of Wood on the Law of Master and Servant: "The servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions: "1st. That the appliance was defective; 2d. That the master had notice thereof, or knowledge, or ought to have had; 3d. That the servant did not know of the defect, and had not equal means of knowing with the master."

In order to apply this law to the pending litigation, it is necessary to state certain facts that are conceded, and not in controversy. The accident occurred during the construction of the Masonic Temple, at the corner of Randolph and State streets, in the City of Chicago, and at the time of the accident but little work had been done other than digging the basement. The basement was some eighteen or twenty feet deep, below the level of the sidewalks. The defendants, building contractors, had the contract for put-

ting a temporary board roof over the basement, for the masons to work under in the basement. That roof was not yet in place, and it was requisite, in order to construct the roof, that certain girders that were intended to support the roof should be put in place, and said girders were 9x12 inches, and about sixteen feet long, and quite heavy. The scaffold, out of which this litigation arises, was being erected on the morning of the accident, and for a temporary object, simply and solely for the purpose of carrying across it one of the wooden girders, and as soon as the wooden girder was across and in the place where it was wanted, the scaffold was intended to be torn down, and a scaffold be put up a little further along, where the next girder was to come, and so on, *seriatim*, until all the girders were in the places where they were wanted. The scaffold was built by nailing a plank across between two upright posts, about the height of the sidewalk or street, and then running joists from that plank and resting them on the sidewalk or a stone wall, which was about level with the street, and then putting loose planks on top of the joists. When the scaffold was finished, and at the time the accident occurred, the plaintiff and some six or nine other men were carrying one of the girders across the scaffold to put it in place, when one of the joists supporting the planks of the scaffold turned over and broke, which caused the planks resting upon said joist to break, and plaintiff was precipitated from the scaffold to the basement beneath, falling upon some timber in the basement, and the girder falling upon him.

The evidence for plaintiff was that the joist that broke was defective, that it had a knot in it at the east end of the joist, about five inches long across the joist, and that it was broken, as one witness says, "right in the knot," or, as another expresses it, "right near the knot," and there is expert evidence that "the knot made a very weak point" in the joist. Witnesses for plaintiff also testified that the

joist was set up on edge, and ran north and south; that the south end of the joist rested on the south wall, and the north end rested upon a brace; that it was not braced up in any way, but was just set upon edge; that it was not fastened or nailed to the post on the inside, not braced with anything, or nailed in any way. And an expert witness testified that if the joist had been fastened it would not have broken.

To revert, now, to the three propositions that the servant must *prima facie* establish, or offer evidence tending to prove, in order to entitle him to go to the jury.

We think there can be no question but that he proved, at least *prima facie*, and we are inclined to think conclusively, that the scaffold was defective, and not reasonably safe.

The second proposition is, that he must introduce evidence tending to show that the master had notice of the defect, or knowledge, or ought to have had. Plaintiff did not comply with this requirement of the law, unless it be that he produced testimony tending to prove that one Joseph Schwartz was a foreman for defendants in the construction of the scaffold and roof, and plaintiff, an employé in such work, subject to his orders, and under his control and direction; and also introduced testimony tending to prove that said Schwartz had knowledge, or ought to have had, of the defect or defects in the scaffold.

Joseph Guillet, a witness for plaintiff, testified, among other things, that both Schwartz and one Curry were foremen for Goldie & Sons, in the work of building the scaffolding, etc.; that he had worked for them before that time, but was not working that day, but was partly promised work, etc. That Mr. Schwartz was the foreman running the work of putting the scaffold up, and ordering the men around. That Mr. Curry was a foreman, too; that both were there bossing the job. Rudolph Theilenhaus, a witness for plaintiff, testified, among other things, that

Schwartz, foreman for Goldie & Sons, was on the scaffold, and when they got the scaffold up Schwartz called Werner (the plaintiff) up from the basement, to give them a hand on the girder; that the girder was in the street, and that Werner came up with his partner. That Werner may have been thirty or forty feet away when Schwartz called him up to lend a hand with the girder, and that he was picking plank up all over the ground. That Schwartz was the foreman in charge of the job of constructing the scaffold and moving the girder, that he superintended it, and was running the gang all the time. That he did not know that Curry was the man in charge there; that he should have gone to either one; that Schwartz was the man he went to and asked for a job, that he had his overalls on, and Schwartz said: "What do you put your overalls on for?" that he answered that he was going to work, and Schwartz then said to him, "Not this morning." That he knew Schwartz was foreman, because he was running the gang; that Curry had his gang the same as Schwartz did, and that Curry's gang was putting up posts all over the place. And said witness designated several buildings on which he had worked under Schwartz as foreman for defendants, and concluded by saying that Schwartz was his foreman right along. Plaintiff was a witness in his own behalf, and, among other things, testified that Schwartz was his foreman while he worked on the Masonic Temple; that he was down in the basement, fifteen or twenty feet from the scaffold, when Schwartz called him to go up on the scaffold, and when he got there Schwartz said he was ready with the scaffold and he would go on with the timber; that Schwartz told him to take that timber in his hand; that eight men helped him to carry the timber, and they were carrying it on the scaffold, and the scaffold fell down when they were half way over, and that there were two foremen, and that Schwartz was the foreman over him when he got hurt. And that, when he fell down underneath the

timber, he heard Schwartz say: "God damn, stand up and lift up the timber." On his cross-examination, he further testified: "I go over to the building and ask for work, and ask for the foreman, and then they sent me over to Schwartz, and I told him he shall give me work, and he put me on to work." And also said, that he first met another foreman, whose name he did not know, who sent him to Schwartz, and that said other foreman "speaks specially with Schwartz to put me in work." And further said: "Schwartz was the foreman, and he was going around from one place to the other, and put the men on to work." He also testified that Schwartz "told us all the time what we got to do;" and after answering some other questions, added, "he was all over." Frank Davidson, a witness called on behalf of the defendants, testified on his cross-examination that he don't know whether there was any foreman in the gang that built the scaffold; that he never had Schwartz as his foreman before the accident, but had him as his foreman after the accident. That he was not working on the scaffold at the time of the accident—was down in the basement, and Curry was down there, and was the foreman there. And on his re-cross-examination he said, among other things, that he don't know that there was another foreman, and don't know that Schwartz was foreman over that gang; but afterwards, in answer to another question, said that "he (meaning Schwartz) was foreman before the accident."

In the references so far made to the evidence, we have stated only that which tends to sustain the contention of plaintiff, that Schwartz was the foreman and direct representative of the defendants themselves, and their vice-principal. We have done this for the reason that, for the purposes of the present inquiry, it is wholly immaterial what the evidence was, or of what weight it was, that tended to establish the defense.

We assume that the evidence already referred to herein tended, or fairly tended, to establish, that Schwartz was a foreman and vice-principal of the defendants. But, even if he was the direct representative of defendants, yet, unless he had notice or knowledge of the defect or defects in the scaffold, or ought to have had such knowledge, the fact of his being such foreman would avail plaintiff nothing.

The defects indicated by the evidence are two: 1st. That one of the joists was knotty and defective near one of its ends; and, 2d, that said joist was set upon its edge, and was not nailed, braced, or otherwise fastened at either end. It is to be noted that Schwartz was superintending the men, and directing and working with them in different places at different times. It was his special duty as vice-principal to see that no defective or dangerous material was furnished the men to work with. It appears from the evidence, that the joists were on the sidewalk or in the street, and such of them as were needed for constructing the scaffold were shoved down into the basement below, and thence carried to the place where they were wanted. Joseph Guillet, one of the witnesses for plaintiff, testified that he saw Schwartz shove the knotty and defective joist out from the sidewalk and from the sidewalk down to the ground in the basement, that some one was there helping him, that he thought it was Frank Dion, that it was not Werner, that Werner was not there, that they had to raise it up on a brace, on a cross-piece, and that he noticed the big knot in it, which was of the dimensions of about four or five inches. If the jury gave credit to this witness, then they would be forced to believe that Schwartz himself selected this defective joist for the scaffold; and therefrom they might legitimately have drawn the conclusion that, in doing so, he, as the direct representative of the common master, and standing in the position of vice-

36—151 ILL.

principal, knew, or ought to have known, that the joist was knotty, defective and unsafe.

There were two joists which supported the floor, and they ran from Randolph street north to the inside of the proposed building. On the Randolph street end they rested on the pavement or a wall, and on the north or inside end they rested on a cross-piece nailed to two posts, one of said posts being placed on the east side and the other on the west side of the scaffold. It was the east joist which supported the east side of the floor that broke.

Plaintiff introduced testimony to the effect that Schwartz and a helper put the north or inside ends of the joists on the cross-piece, nailed to the two posts, and put them on the inside of said posts. And Schwartz himself testified that Frank Dion and himself adjusted the ends in the basement. It follows from this that Schwartz then had a further opportunity of ascertaining that the east joist was badly knotted and defective. And, besides this, he must necessarily have known that the joists were on edge and not fastened by nailing or otherwise to either the posts or cross-pieces. And he ought to have known that for that reason alone the scaffold was unsafe for the transportation over it of a large number of men carrying so heavy a burden of timber.

So, we are forced to the conclusion that, so far as the requirement that the evidence must tend to prove that the master had notice of the defect, or knowledge of it, or ought to have had such knowledge, is concerned, the plaintiff was entitled to have his case go to the jury.

It is claimed in the reply brief of appellants, that the case at bar comes squarely within the decision in *C. & A. R. R. Co.* v. *May*, 108 Ill. 288, and that this case should on the authority of that case be decided in their favor. And in said reply brief is quoted certain language of this court in its opinion there filed, as follows: "Every case in this respect must depend upon its own circumstances. If the

negligence complained of consists of some act done or omitted by one having such authority, which relates to his duties as a co-laborer with those under his control, and which may just as readily have happened with one of them having no such authority, the common master will not be liable. * * * * * But when the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable; in such case he is not the fellow-servant of those under his charge, with respect to the exercise of such power.''

The question whether the negligence of the foreman in this case was, under the circumstances of the case, the negligence of a fellow-servant, or the negligence of a master of whom the foreman was the direct representative, was a question of fact for the jury. The issue upon that question was, therefore, conclusively settled by the judgments of the trial and Appellate Courts; and we must presume that it was settled right and upon correct legal principles, unless it affirmatively appears from the record that the court committed some error of law in its rulings upon the instructions, or in some other way. In this case appellants asked no instruction that would especially call the attention of the jury to the doctrine of the *May case;* and they can not now complain that the court did not do something that it was not called upon to do. We may, however, suggest that it is settled law, as we understand it, that to the extent of the discharge by a foreman or other superior servant of those duties which the master owes to his servants, such foreman or other superior servant stands in the place of the master; and we further understand that the supplying of safe machinery, tools and appliances with which to work, and which latter would include the joist and scaffold here involved, is one of the duties that the master owes to his servants.

It is further required of a servant, that, in order to make out a case against his master, he should prove that he did not know of the defect, and had not equal means of knowing with the master. Did the plaintiff produce testimony tending to prove compliance with this requirement?

Plaintiff denied positively in his testimony that he carried the joist with the knot in it, that broke. He was contradicted in this by Guillet, who swore that the plaintiff, with another man whose name he can not recall, took the joist in question from the pile in the road, and that they took it across the sidewalk and put it in the basement, and that Werner had hold of one end, and some one he did not remember had the other end. Plaintiff was corroborated, however, by Theilenhaus, who swore that he saw Schwartz take the joist, which was about sixteen feet long, from the sidewalk and put it into the cellar, that he thinks it was Frank Dion who helped him, but is not sure—and that Werner was not there at all. This conflicting testimony presented a proper question of fact for determination by the jury, but it can not be said that what was sworn to by the plaintiff and Theilenhaus did not tend to prove that plaintiff did not know of the defect, and had not equal means with Schwartz of knowing of such defect. And as further tending to show such want of knowledge, or comparative means of knowledge, the facts in proof that to carry the joist two men were required, one at each end, and that the knot was near one end, are to be considered; since, even if plaintiff was mistaken as to not having helped to carry that joist, still it may well be that he had hold of the end farthest from the knot, his attention, therefore, not so likely to be called to it. And, besides this, it is admitted by Schwartz that he helped in putting said joist in place on the scaffold; and, on the contrary, there is much testimony to the effect that plaintiff was most of the time employed in carrying planks and timber in the basement; and it was sworn to by him that he was not on the scaffold until it

was finished, and he was called up by Schwartz to assist in carrying the girder, and that at that time the joists were covered up by the boards placed across them. This testimony most assuredly tends to prove not only that plaintiff did not know of the defects, but that he had not means of knowing equal to those afforded to Schwartz, the direct representative of defendants.

Our conclusion is, that it was not error in the trial court to refuse to direct a verdict for defendants, or to refuse to give to the jury the proffered instruction, that their verdict must be for the defendants.

Defendants can not, by a course like that pursued at the trial of this case, deprive plaintiffs of both the constitutional right of a trial by jury, and of the statutory right of having the facts of the case finally settled by the judgment of the Appellate Court.

The second and sixth errors assigned are not sustained.

3. The third, fourth and fifth assignments of error may be considered together. As our attention is not called in the briefs and arguments of counsel to any instances wherein it is denied that the court either admitted improper evidence for the plaintiff, or excluded evidence offered by defendants, or gave any instruction or instructions for the plaintiff, we must regard these assignments as abandoned by defendants.

4. The seventh error alleged is that the verdict of the jury is contrary to the law and the evidence. We are not advised wherein the trial court committed any error of law in its instructions or otherwise; and under the statute and numerous decisions of this court, the judgments of the trial and Appellate Courts are conclusive as to the facts of the case.

5. The eighth error assigned is, that the damages are excessive. It has frequently been held by us that the amount of the damages awarded, in suits such as this, is

only a question of fact, and that the judgments of the lower courts in regard thereto are final and conclusive.

6. The ninth alleged error is, that the court erred in overruling the motion for a new trial, and in entering judgment on the verdict. The facts of the case being settled by the judgments of the courts below, and there not appearing to be any manifest error in the proceedings of the court prior to the rendition of the judgment in the trial court, it necessarily follows that the motion for a new trial was properly overruled, and final judgment rendered on the verdict of the jury.

7. The tenth and last error here assigned is that the Appellate Court erred in affirming the judgment of the court below. This alleged error is not sustained by the record, as fully appears from what we have already said herein.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*