WARREN B. HOWE *et al.*

*v.*

ALBERT MEDARIS.

*Opinion filed December 21, 1899.*

1. MASTER AND SERVANT—*essentials of right of servant to recover for injury.* To entitle a servant to recover from the master for an injury received from a defective appliance, he must show that the appliance was defective, that the master had knowledge thereof or ought to have had, and that the servant did not know of the defect and had not equal means of knowing with the master.

2. SAME—*when servant is not entitled to recover for injury.* A recovery by a servant for injury from a defective appliance cannot be sustained on appeal, where there is not only an absence of evidence tending to show his want of knowledge of the defect, but, on the contrary, the evidence clearly shows that he had such knowledge and failed to impart it to the master.

3. EVIDENCE—*what not competent in action for negligence.* In an action by a servant who bases his right of recovery solely upon the defective condition of a paper-cutting machine, testimony as to the size of paper being cut at time of injury is not admissible.

4. SAME—*evidence of repairs to machinery after injury not admissible.* The question of negligence must be determined from what occurred before or at the time of the injury, and evidence of repairs made to the machinery after the injury is not admissible.

5. APPEALS AND ERRORS—*when admission of improper evidence will reverse.* The admission, in an action for negligence, of testimony to the effect that repairs were made upon the machinery after the injury, is reversible error, where the objection to the admission of the evidence and the subsequent motion to exclude it were both overruled, and no instruction was given or other means employed to apprise the jury such evidence was not entitled to full credit.

*Howe* v. *Medaris,* 82 Ill. App. 515, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

D. J. & D. J. SCHUYLER, Jr., for appellants.

WICKERSHAM & HAYNER, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal by Warren B. Howe and others, partners, owners of a paper-box factory in Chicago, from a judgment by the Appellate Court for the First District affirming a verdict and judgment for $3250 rendered against them in the circuit court of Cook county, in favor of Albert Medaris, appellee, in an action for a personal injury. The injury was to appellee's right hand, he having lost a thumb and two fingers in a machine for cutting paper, in the factory of appellants.

The declaration alleged the cutting machine was operated by steam power, so adjusted that by working a lever certain gear wheels could be thrown together or disconnected and the power be thus attached or cut off; that plaintiff was inexperienced in mechanics and not familiar with the application of steam power to the cutter; that it was defendants' duty to have the machinery in good condition, but, regardless of this duty, the defendants operated the "paper-cutter, lever and cog wheel" in a worn and defective condition, by means of which defect the knife "was not held in place so as to permit the removal of paper which had been cut," but by reason of such defect the knife would fall before it was intended it should; that defendants did not advise plaintiff of this defective condition; that while plaintiff was discharging his duty "with all reasonable care and diligence, and was engaged in removing a certain lot of paper from said cutter, which had been properly cut," the knife, without warning, fell upon plaintiff's hand, etc.

Upon the trial, at the close of all the evidence, appellants asked the court, in writing, to instruct the jury to find for the defendants, upon the ground that there was no evidence offered fairly tending to prove the plaintiff's cause of action. This instruction was refused, and the appellants here urge as error the action of the court in refusing to give the instruction. Under this error appellants insist: First, the evidence wholly fails to show any

negligence on the part of the defendants, and there was no evidence from which such negligence could be reasonably inferred; second, that all the testimony, including that of the plaintiff himself, proved the danger and risk which caused the injury were well known to and assumed by the plaintiff; and third, the evidence wholly fails to show due care on the part of the plaintiff to avoid the danger, but does show that the accident was the result of his own negligence. Questions of fact are raised by each of these propositions, which have been settled adversely to appellants, unless we can say, as a matter of law, that there is no evidence in the record which, with all its reasonable intendments and inferences, fairly tends to establish them.

In considering the refusal of the trial court to give this instruction in an action for a personal injury, the instruction being asked at the close of all the evidence, in the case of *Goldie* v. *Werner*, 151 Ill. 551, we said (p. 556): "The rule of law in respect to the burden of proof that is imposed upon a servant in a suit against his master for injuries resulting from defective machinery, etc., is stated in section 414 of Wood on Law of Master and Servant: 'The servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions: First, that the appliance was defective; second, that the master had notice thereof, or knowledge, or ought to have had; third, that the servant did not know of the defect, and had not equal means of knowing with the master.'" The rule was there approved and followed, and is the well settled law of this State. Applying it to this case, we shall look into the evidence, in considering the error urged here, for the purpose of determining whether or not there was an absence of any evidence fairly tending to establish either one of these essential elements of plaintiff's case. If we perceive any such evidence we will not assume to pass upon its weight, that having already been passed upon by the Appellate Court.

The paper-cutter where appellee was injured consists chiefly of a table, upon which works a large knife propelled by steam power. When cutting paper the operator stands before this table, and has within his reach (just below the bed of the table) a lever, the purpose of which is to throw the machine in motion and start the knife. Attached to the handle of this lever is what was termed by the witnesses a "dog" or spring. When the knife is not operating this dog is used to lock the machine and prevent the lever from being raised. The machine is started by grasping the lever (and also this spring beneath the lever, which unlocks the dog,) and giving it an upward motion. This motion causes a cog or gear wheel at one side of the machine to move to the right and come in contact with another gear wheel. The latter is turning all the time, being connected with the steam power. When the gear wheels come together the machine is set in motion and the knife descends upon the table. Appellee testified he had worked on this machine, off and on, for over a year; that he was turned off from the shop about a week before getting hurt; that he came back on Wednesday and was injured Thursday, at about 2:30 P. M. On Wednesday the machine had been moved to one side a few feet, to make room for a printing press. On Thursday morning, about eight o'clock, he was set to work on this machine, trimming paper, cutting the glue edge off of material for paper boxes. This he continued until about eleven o'clock, when he was directed to cut some wood-pulp paper. He continued this work up to the time of the accident, being occasionally interrupted to do other things. While taking some paper out of the machine he placed his hand under the knife, which came down when he was not expecting it, and he received the injury alleged. He testifies: "I noticed before, while I was cutting the paper, that every now and then there was a clicking, as if something was wrong. I did not say anything nor they did not say anything. I looked

around once in awhile and leaned over this way, and
could see those gear wheels, when the machine was stand-
ing still, were just barely touching one another. I did
not say anything but kept right on cutting. When the
lever flew back automatically the knife flew up. The cog
wheels went into operation the same as they always did.
I mean to say that the cog wheels went together,—that
the cog wheels went together like they should be when
the knife flew up,—and then when the knife would come
up there was a clicking made continually. It was these
gear wheels that was close together. At the time the
accident occurred I had both hands in the center of the
bunch of papers on each side and the knife dropped.
The jar of the machine or the jar of the building jarred
the machine and the knife dropped. I had both hands
in the machine at the time the knife dropped. The lever
made a click or noise and moved up, just as it does when
you are operating the machine. At that time I did not
have my hand on the lever. At the time I got hurt both
hands were in the center of this bunch of papers. All I
know about it is that the knife dropped. That is all I
knew until Friday about that." On cross-examination he
testified: "I had run the machine, off and on, all forenoon.
I heard the clicking sound now and then. I did not no-
tice anything out of the ordinary besides that. I noticed
this clicking sound during the whole time I was working
on the machine during the morning. It was because it
was out of order in some way, and I do not know exactly,
but these cog wheels should be a half inch to three-quar-
ters of an inch apart when in good order, and I noticed
that forenoon that it was not in the same condition as it
was before I got turned off. I did not say anything about
it to Howe and he did not say anything to me. In order
to produce this clicking the clutches rubbed together.
The clutches would come together that way and that
would throw the machine in motion—that would drop the
knife down and raise the lever. * * * I did not object

to cutting the paper. I did not say anything to Howe about it.  *  *  *  When I cut the seventh batch, or the last batch, there was only the clicking of the cogs. That had been going on all morning and I did not say anything about it." On re-direct examination he says: "On Thursday morning when I went to work I heard this clicking and looked around this way, and I saw these clutches or gear wheels that come together in this way were touching one another this way." That the machine was out of repair was, as shown by plaintiff's own testimony, known to him. And it was also shown by another employee, named Finn, that the irregular action of it, which finally resulted in the dropping of the knife, was obvious.

Applying to this evidence the rule followed in *Goldie* v. *Werner, supra,* we find, first, there was evidence tending to establish that the apparatus for locking the lever and preventing the knife from working was defective; and second, it may be conceded that the master had "notice thereof, or knowledge, or ought to have had." But in considering the third essential element of plaintiff's case, can it be said there was any evidence produced on the trial fairly tending to prove that plaintiff did not know of the defect, and had not equal means of knowledge as to that fact with the master? From our consideration of all the evidence we are forced to the conclusion that it does not show, or tend to show, an absence of such knowledge. On the other hand, it clearly proves the plaintiff was aware of the existence of the defect. He had cut paper on the same machine for a year. He was a man thirty-one years of age at the time of the injury. He well knew that the knife, when the gear or cog wheels came together, was set in motion. During the whole of the morning before the accident he observed a clicking sound, which he discovered to be caused by the gear wheels rubbing each other. He knew, and testified, these wheels should have stood from a half to three-quarters of an inch apart, and yet he observed them so nearly in con-

tact as to be clicking and rubbing against each other, and he must have known that in that condition the knife was liable to be started at any instant. He said nothing about it to any one, but kept on working. This is the substance of his own testimony, unexplained and uncontroverted, with reference to his knowledge; and we repeat, it not only fails to establish or tend to establish his want of knowledge, but clearly shows he had notice of the danger and of the defective condition of the machine.

From what we have here said it must follow that plaintiff has failed to prove, or offer evidence fairly tending to prove, that he was at the time of the accident in the exercise of reasonable care for his own safety. His own testimony is susceptible of no other construction than that he was guilty of gross negligence in that regard, both in using the machine after he knew it was, working imperfectly, and in failing to give any notice whatever of that fact. Due care and caution on the part of the servant are indispensable to his right to recover against the master for an injury charged to the latter's negligence or omission of duty. We said in *Pennsylvania Co.* v. *Lynch,* 90 Ill. 333, in an action for a personal injury received by reason of a defective platform (p. 337): "This record will be searched in vain for evidence of any one having a more thorough knowledge of the capacity of these platforms, and the accidents incident to them, than had appellee. He never objected to their use, and he made no suggestions to his superiors that they be changed and others substituted. If appellant was negligent in not furnishing different platforms, in what respect does that negligence differ from appellee's negligence in continuing to use them without objection and without an effort to change or improve them? If appellant's negligence consisted in continuing to use them knowing they were unsafe, who, connected with the company, possessed that knowledge in a higher degree than appellee? He, no less than all other employees, owed a duty to his employer

to call attention to imperfections and defects in the implements in use in the line of his employment imperiling the safety of the employees or interfering with their duties, yet he is silent." To the same effect are *Chicago and Alton Railroad Co.* v. *Munroe*, 85 Ill. 25, and *Camp Point Manf. Co.* v. *Ballou*, 71 id. 417.

Whether this record contains any evidence tending to prove each and every element of plaintiff's cause of action,—one of which, clearly, is reasonable care and diligence on his part, as alleged in his declaration,—was raised by the instruction asked on behalf of the defendants and refused, as a question of law reviewable in this court. We are of the opinion the instruction should have been given, and that its refusal was reversible error.

Objection is made to the admission of testimony offered by plaintiff with reference to the size of the paper which was being cut at the time plaintiff received his injury. The admission of this evidence was error, for the reason that this cause of action was based solely upon the allegation of defective machinery. Without reference to the kind or size of paper being cut, plaintiff himself says the accident could not have happened had the machine been working properly, the fault thereby being placed upon the defect in the machine, and not upon the size or quality of the paper.

It is contended the trial court erred also in the admission of testimony to the effect that the machine was changed or repaired after the accident. The purpose of this evidence was doubtless to show an implied admission of negligence on the part of the defendants. The rule in such cases is, that the question of negligence should be determined only by what occurred before and at the time of the accident, and evidence of repairs made after the accident is not admissible. *Hodges* v. *Percival*, 132 Ill. 53; *Marder, Luse & Co.* v. *Leary*, 137 id. 319; *Weber Wagon Co.* v. *Kehl*, 139 id. 644; *City of Bloomington* v. *Legg*, 151 id. 9.

Counsel insist this evidence, even though it be inad missible, would not amount to reversible error. If this were the only error relied upon by appellants we think it would justify a reversal of the judgment below. Whether the admission of such evidence over objection will amount to reversible error is stated in *Hodges* v. *Percival, supra,* as follows: "If it can be plainly seen from the record that the error complained of could not have possibly worked any injury to the complaining party, and that the verdict must have been what it was in spite of such error, then the judgment ought not to be reversed."

As above indicated it is extremely difficult in this case to extract from the evidence on behalf of plaintiff alone whether the defendants were guilty of the negligence charged in the declaration, while that offered by the defendants strongly tends to prove that they were without fault. If, however, there had been an instruction given or any action taken by the court, appearing on the face ·of the record, curing or tending to remove the error, we should be inclined to affirm on this point. But it appears the specific objection was urged when the evidence was introduced, and overruled. The question was raised again at the close of the evidence, by a motion to strike out the testimony, and again overruled. No instruction whatever was given correcting or tending to correct the error. Nothing appears which can be said to tend to remove any impression the jury might have received therefrom, but, on the contrary, there is no reason for supposing that the jury was not impressed with the belief that it was entitled to full credit.

For the errors indicated the judgments of the Appellate and circuit courts will be reversed.

*Judgment reversed.*