# William Graver Tank Works v. Patrick H. O'Donnell, Adm'r.

1. EMPLOYER AND EMPLOYE—*Imminent Danger, a Question for the Jury.*—Where an employe is ordered to go to a dangerous place to perform a service, the question as to whether the danger was so imminent to such employe that no man of ordinary prudence, having knowledge of the situation, would have incurred it, is one for the determination of the jury.

2. SAME—*Hazards Assumed by Employes.*—An employe assumes the risk of the service in which he is engaged, but he has a right to presume that all proper attention will be given to his safety, and that he will not be needlessly exposed to risks not necessarily resulting from his occupation and preventable by ordinary care and precaution on the part of his employer.

3. SPECIAL INTERROGATORIES—*Not Relating to Ultimate Facts.*—Where an answer "yes" or "no," if given to a special interrogatory, will not be decisive of the case, and does not relate to an ultimate fact, such interrogatory should not be submitted.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed October 29, 1900.

Statement.—September 9, 1896, Isaac D. Alyea, an employe of the appellant, was injured by falling from a scaffold used in the erection of an iron tank, and died the following day. His administrator brought suit in the Circuit Court for the benefit of his widow and next of kin, a trial of which resulted in a verdict in his favor of $5,000, but the court granted a new trial. On a second trial the administrator recovered a like verdict, on which judgment was rendered by the court, from which this appeal is prosecuted. On the last trial the jury made the following special finding:

"Was Alyea, the deceased, twisted off the plank upon which he stood, by Lee and Holub, while they both had hold of the tongs, trying to unloosen or unscrew the joint?" A. "We don't know."

Appellant was engaged in building steel grain elevators

in Chicago. These structures were of steel plates, riveted together, and the roof was of the same material. The elevator upon which the work was being done was about fifty feet high and thirty feet in diameter, and made of steel sheets about ten feet long and five feet wide. After the bottom had been laid, a piece of this steel plate was put on the bottom and riveted to it, end to end, until it formed a circle five feet high. It was then necessary to erect a scaffold four feet high, both on the inside and outside of the tank, in order that the next section of five feet might be riveted on to the first piece. This scaffolding was carried up on the inside and on the outside until the top was reached; then preparations were made for putting on the roof. In order to do this, appellant's employes, the scaffold builders in this tank assisting, screwed together three sections of six-inch iron pipe and set the pole thus formed in the center of the tank; on top of this they put a steel plate or ring, into which one end of the iron beams were placed, and the other rested on the circular scaffold on the inside of the tank. On these beams planks were laid, and on these planks the workmen stood while putting up the iron rafters, and on them the roof plates were placed.

A man by the name of Platt had charge of building the scaffold. He bossed the job on the outside, and Alyea, the deceased, bossed the job on the inside. Alyea was a scaffold builder—a carpenter. He, with his assistants and laborers, built the scaffold on the inside of the tank, next to the plates. When the tank or elevator had so far progressed that they were ready to put on the roof, appellant's employes, including Alyea, put up the center scaffold, putting the pipe next to the inside scaffold, and, setting the first piece of eighteen feet on end, fastened the second piece of sixteen feet to the rope attached to a pulley at the top of the scaffold, drew up the piece, and by aid of men, some of whom held the eighteen-foot piece on the bottom, others of whom stood on the scaffold eighteen feet above with tongs, and screwed the pipes together; then the third length was screwed on in substantially the same way. When about fifty feet of pipe

had been screwed together the whole was by them moved from the side scaffold to the center of the tank, stayed with wires to the side, and then the scaffold was built on it by the same men. When the roof was completed appellant's employes, Alyea included, commenced to take down the scaffold. First they removed the plank from top of center scaffold, then the side beams, then cut the stay wires, and moved the pipe over to one side and against the scaffold, just as it was when the men had finished screwing it together and before they had moved it to the center of the tank. They then commenced to unscrew the bottom length of the pipe, preparatory to taking it down. There were present at that time Holub, Alyea, Flannigan, Platt and Wedgewood and a man by the name of Lee, who was the general foreman in the tank construction work, and who has since died. They were all employes of appellant. Flannigan and Platt were at the top of the side scaffold against which the pole rested, holding the top of same. Alyea was on the same scaffold next to the inside of the tank about eighteen feet from the floor, having been told by Lee, the foreman, to go up there with the tongs to hold the pipe. Lee, Holub and Wedgewood had hold of the pipe at the bottom with tongs. Streed was called in from the outside and found parties in the position as stated, but no work had commenced toward unscrewing the pipe. He was told by Lee to go up where Alyea was and put a rope around the middle length pipe. After he had done this, the work commenced. Alyea was holding the pipe with tongs, Streed was holding same with rope, while Holub, Wedgewood and Lee were unscrewing the same with tongs at the bottom, and while so at work Alyea either fell off or was thrown off from the scaffold, and was fatally injured from the fall.

At the close of the plaintiff's evidence appellant's counsel asked the court to instruct the jury to find the defendant not guilty, which was denied, and at the close of all the evidence the request was renewed and again denied.

F. J. CANTY and A. B. MELVILLE, attorneys for appellant.

ELA, GROVER & GRAVES and WING & CHADBOURNE, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Three questions are presented by this record, viz.: First, did deceased exercise ordinary care for his own safety; second, did he assume the risk; and third, was appellant negligent.

We are of the opinion that the question of deceased's care was one of fact for the consideration of the jury, and we can not say that the verdict in this regard can be said to be manifestly against the evidence. When deceased was told to go upon the scaffold by his foreman, Lee, it is testified by the witness Wedgewood that Alyea said to Lee, "There is only one plank there;" to which Lee replied, "Go up there." He used a little stronger language than that. "Damn it, get up there—get up there." The witness Platt, who was at the top of the tank, forty-eight feet above Lee when he ordered Alyea to go upon the scaffold, says that he did not hear any conversation between Lee and deceased. Streed, who was on the scaffold from which Alyea fell and held the pipe with a rope attached to it, was not interrogated upon the point, nor was Holub, who assisted Lee. No other witness testified upon the subject.

Even though the scaffold was not a safe place to work, and this fact was apparent to Alyea, he was ordered to go upon it by Lee, his foreman, and the question was one for the jury as to whether the danger was so imminent to Alyea that no man of ordinary prudence, having the knowledge of the situation which he had, would have incurred it. Offut v. World's Col. Ex., 175 Ill. 472–9, and cases cited; Pittsburgh B. Co. v. Walker, 170 Ill. 550.

Whether or not Alyea assumed the risk was also a question for the jury. It is contended by appellant that the taking down of the iron pipe was in the line of Alyea's employment. Alyea was employed as a carpenter. That was his trade, and while he assisted in putting up this particular pipe, it does not appear that he had ever done that

kind of work before, or that he had ever been engaged in taking down such a pipe for appellant, and the jury might well have found, from the evidence, that it was outside his employment. If, however, the taking down of the pipe was in the line of Alyea's employment, it does not follow that he assumed the risk.

It was said in Union, etc., Co. v. Blindauer, 175 Ill. 325, a case of injury from defective machinery, that the servant before he assumes the risk must not only know the defects but the dangers incident thereto.

In Alton, etc., Co. v. Hudson, 176 Ill. 270, the court in speaking on the subject of assumed hazard, say:

" He assumes the risk, more or less hazardous, of the service in which he is engaged, but he has a right to presume that all proper attention should be given to his safety and that he shall not be carelessly and needlessly exposed to risks not necessarily resulting from his occupation and preventable by ordinary care and precaution on the part of his employer."

We think that the evidence fairly tends to show that deceased was needlessly exposed to danger by being directed to go upon the scaffold in question, and that this danger was not one necessarily resulting from his occupation, and was not an ordinary risk of his employment. The verdict in this regard can not be said to be clearly against the evidence.

The case of Howe v. Medaris, 183 Ill. 288, relied upon by appellant in this connection, does not, in our opinion, control the case at bar. The court say in speaking of the evidence:

" It not only fails to establish or tend to establish his (appellee's) want of knowledge, but clearly shows he had notice of the danger and of the defective condition of the machine."

Whether or not the appellant was guilty of negligence which resulted in the death of Alyea was also a question for the jury. It may be conceded, for the purpose of this case, that appellant was not negligent in the manner in which it constructed the pipe in question, and still it was a

matter for the jury to determine whether or not the appellant was negligent in the manner in which it, through its foreman, proceeded to take down the pipe. Whether it was negligence on Lee's part to order the deceased to go upon the scaffold eighteen feet above the ground and hold the pipe with a pair of tongs while two men, and as the jury were justified from the evidence in finding, while three men, with another pair of tongs, used their united efforts in unscrewing the lower joint, was a question on which the jury were justified in finding as it did. Moreover, we think it may be well said that the jury, from their own knowledge and experience in such matters, under the evidence might have found that the foreman was negligent in attempting to remove the lower joint of the pipe first instead of the upper one. It was for the jury to say whether the method adopted was negligent or not.

It is claimed by the appellant that the special finding of the jury is inconsistent with the general verdict, but we are of the opinion that the contention is not sound.

The answer "yes" or "no" to the interrogatory would not have been decisive of the case one way or the other, and for that reason the question should not have been submitted by the court. It did not relate to an ultimate fact. R. R. Co. v. Eggmann, 159 Ill. 550; R. R. Co. v. Winters, 175 Ill. 306.

If the answer had been "yes," that would not necessarily relieve appellant from liability upon the theory that the men at the bottom of the pipe were Alyea's fellow-servants. The fact that Lee aided temporarily in unscrewing the pipe did not relieve appellant from the responsibility of his directing deceased to work in an unsafe place. Pittsburgh etc., Co. v. Walker, 170 Ill. 550.

As we have seen, the jury's verdict as to the care of Alyea and as to the assumption of the risk, and that Lee was negligent in directing Alyea to go upon the scaffold under the circumstances shown, can not be said to be clearly against the weight of the evidence. It is not important, in our opinion, whether Alyea was twisted off the scaf-

fold or not. We think from a consideration of the whole evidence, that Alyea was caused to fall either because the place where he was put to work was not reasonably safe, or that he was twisted or pulled off by the action of the men holding the tongs at the bottom of the pipe. It is enough that he was caused to fall by appellant's negligence as charged.

Other matters are presented by counsel both for appellant and appellee, as bearing upon these three questions, but we deem it unnecessary to refer specially to them, as what is said sufficiently disposes of the merits of the appeal. Being of opinion that the case was properly submitted to the jury, and that there is no error in the record, the judgment is affirmed.