LYDIA HERRING, ADMINISTRATRIX OF THE ESTATE OF
HAROLD S. HERRING, DECEASED

*v.*

THE STATE OF ILLINOIS.

*Opinion filed January 21, 1902.*

1. PROXIMATE CAUSE—*not sufficient to show one of two conjectures more probable than the other.* In attempting to prove a defect to be the proximate cause of an accident it is not sufficient to show that it is more probable that the injury was caused by the defect than otherwise.

2. MASTER AND SERVANT—*what necessary in order to hold master liable for defect.* A servant, in order to recover for an injury, for defects in the appliances in his business, is required to establish three propositions. 1st: That the appliances were defective. 2d: That the master had notice thereof, or knowledge, or ought to have had, and 3d: That the servant did not know of the defect, and had not equal means of knowing with the master.

3. SAME—*servant must report defect at once.* It is the duty of a servant to report a defect at once to his superiors, and if he fails to do so it is negligence on his part that will bar recovery.

The record in this case shows that claimant's intestate, Harold Herring, was a trumpeter in company "C," 5th Regiment, Illinois National Guards. The company was called out for duty in November, 1898, to suppress rioting at Pana, during the miners' strike. Herring was on duty with his company from the date of its call until the date of his death, December 29, 1898. As a trumpeter he was not required to carry a gun, but on the night of his death serious trouble was expected, and every member of the company was on duty, and Herring volunteered to go on patrol duty with a gun, instead of guarding the barracks. His services were accepted and he was detailed for duty with a squad of eight men to guard incoming trains, and stationed with another soldier, Robert Steele, at a point near the tracks of the Big Four railroad, with instructions to watch all incoming trains, and report the arrival of any large body of men, and to protect themselves, if necessary. They were assigned to this position for duty about eleven o'clock at night, and instructed to stay close to the railroad tracks, but the distance they should go from the track was not designated. The night was cold and disagreeable, having rained and sleeted, and the two boys took shelter in a coal shed near by on a private lot bordering on the right of way of the railroad. The shed was about nine feet long and six feet wide, with a low roof, and with a door on the east side and a small window on the north side with a pile of coal sloping down from the window sill. In a short time a coal train passed, and Steele testified he stepped out of the shed followed by Herring, to watch the train, and after they got outside he heard the click of a gun, and supposed that Herring had cocked his gun. It seems the train did not stop, and they returned to the shed. Soon after this, as Steele was standing in the door and Herring was kneeling on the coal pile looking out of the window of the shed, leaning on his gun, Herring called to Steele to come to the window and look at a strange light that had attracted his attention, but before he could step to the win-

dow there was a report of a gun, and being blinded by the flash, supposed someone had shot from the outside. Steele backed out of the door of the shed and took a position so as to be prepared to defend himself, but not hearing any further noise inside of the shed, or outside, ran about two blocks east to where the Sergeant in command of the squad was stationed, and reported that Herring had either shot himself or had been killed. The Sergeant assembled a squad and went to the shed, and found the dead body of Herring lying with his head and shoulders out of the door, with his gun, which had recently been discharged, by his side. The bullet had entered his right side, taking a slanting course upward, and gone out of the left shoulder blade.

It is contended by counsel for claimant that the gun furnished Herring was defective, in that it would go off with a slight jar at the half-cock, safety or full-cock, and by reason of such defect the gun was accidentally discharged, causing his death while in the line of his duty, and that the State should pay damages to his administratrix.

The claim is resisted by the Attorney General on the grounds:

First: Because the doctrine of *respondeat superior* does not apply to the State.

Second: That even if the State could be held liable for the misfeasance of its officers or agents, no recovery could be had under the evidence in the case at bar.

We have reached a conclusion and decided the case under the second ground of defense, and it will not be necessary, therefore, to consider the first.

Applying to this case the same rules of law that would be applicable if the case were one between individuals brought by an employe against an employer, it would be necessary to show, of course, that the defect complained of was the proximate cause of the death of the deceased. There is no doubt the gun of the deceased was defective; that it would go off either at safety, half or full-cock with a slight jar, but the evidence fails to

show that the defect caused the discharge of the gun which resulted in the death of the deceased. Steele, the companion of the deceased, testified that when they went out of the shed he heard the click of a gun, and it would seem from his testimony that Herring returned to the shed with his gun cocked, and was kneeling on the coal pile leaning over the muzzle of the gun, when the accident occurred. Of course the accident would be more likely to occur with a gun which would not stand cocked, but he had placed himself in a position where the accident would be liable to occur if the gun had not been defective, and it is not enough to show that one conjecture is more probable than another.

Bailey's Personal Injuries, Vol. I, pp. 563-564.

Accidents of this kind are of frequent occurrence with guns without defects, and this evidence shows that the deceased was not in the exercise of due care and caution for his own safety, regardless of the condition of the gun.

But if it be conceded that the accident would not have occurred but for the defect of the gun, then the case should be decided by the rules laid down by our Supreme Court to justify a recovery by an employe or subordinate against his employer for an injury received by reason of defective implements or tools alleged to constitute the wrongful act or neglect of the principal.

In Goldie v. Werner, 151 Ill., 551, our Supreme Court say:

"A servant, in order to recover for an injury for defects in the appliances in the business, is required to establish three propositions:

First: That the appliances were defective;

Second: That the master had notice thereof, or knowledge, or ought to have had; and,

Third: That the servant did not know of the defect, and had not equal means of knowing with the master."

See also,

*Howe* v. *Medaris*, 183 Ill., 288;

*L. E. & W. R. R. Co.* v. *Wilson*, 189 Ill., 89.

Applying these rules to this case we think the evidence in the record clearly shows the first proposition—that the gun was defective. There is no evidence in the record, however, to show under the second proposition that the superior officers of the deceased had knowledge of the defect, but even if it is assumed that they ought to have had, under the circumstances shown in the evidence, yet claimant has wholly failed to establish the third proposition in order to maintain a recovery, to-wit: that the deceased did not know of the defect of the gun.

The record shows by the witness, Bogardus, called by claimant, who is an expert marksman, and familiar with guns, and a member of Co. "C," that at the request of the deceased he examined the gun either the night of the accident, or within a day or two prior thereto, and that he informed the deceased of the condition of the gun, and told him to go to the Sergeant and get another gun, or refuse to go out. This clearly shows that the deceased did know of the defect of the gun. The record does not, however, disclose whether the deceased ever informed any of his superior officers of the condition of the gun. It was the duty of the deceased to report this defect at once to his superior officers, and if he failed to do so it would be negligence on his part that would bar recovery.

> *T. W. & W. R. R. Co.* v. *Eddy,* 72 Ill., 138;
>
> *Howe* v. *Medaris,* 183 Ill., 288;
>
> Bailey's Personal Injuries, Vol. I, Secs. 830 and 837.

He may, of course, have reported the defect in the gun to some one of his superior officers, although the record is silent on that point, but whether he did or not, under the rules laid down in the cases we have cited, he assumed the hazard in the use of the defective gun after he had learned of its defect, and voluntarily continued using it.

When we apply the established rules of our Supreme Court to the evidence in this record we feel constrained

to hold that no award can be made, and the claim is therefore rejected, but it is directed that the parties hereto shall not be concluded by this opinion in case the claim is presented to the Legislature.