### Illinois Central Railroad Co. v. Emil M. Schumann.

1. VERDICTS—*When to be Directed for the Defendant.*—Where the evidence is clearly insufficient to justify a recovery by the plaintiff a verdict for the defendant should be directed.

2. NEGLIGENCE—*In the Use of Dangerous Fuel.*—In order to show negligence in the use of dangerous fuel, it is necessary not only to establish that the fuel used was dangerous, but that the defendant had notice, or in the exercise of ordinary care should have had knowledge of its dangerous character.

3. RECOVERY—*Accidents Not Reasonably in Anticipation of the Defendant.*—Where an accident can not be said to have been reasonably in the anticipation of the defendant, there can be no recovery for an injury occasioned by it.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1901. Reversed. Opinion filed May 5, 1902. Rehearing denied.

Statement by the Court.—Appellee, while engaged as a fireman of stationary boilers of the appellant in its car shop

and works at Burnside, Illinois, was burned June 27, 1897, by an explosion or gush of flame from the boiler he was firing with certain refuse of sawdust and shavings from appellant's planing mill. Suit was brought to recover for appellee's injuries, a trial of which, before the court and a jury, upon the plaintiff's evidence alone, the defendant offering no evidence, resulted in a verdict for plaintiff of $1,500 and judgment thereon, from which this appeal is taken. At the close of the plaintiff's evidence, and before the argument to the jury, counsel for appellant asked a written instruction directing a verdict for appellant, which was refused and an exception preserved.

W. A. HOWETT, attorney for appellant; J. G. DRENNAN, of counsel.

CANNON & POAGE, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

No question of procedure is presented by the appellant, and the only error relied upon is the refusal of the trial court to direct a verdict for the appellant. It is argued that the evidence shows, not only that the appellant was not guilty of any negligence, but also that the appellee assumed the risk and did not exercise ordinary care for his own safety. As to the care of appellee and his assumption of the risk, it seems unnecessary, in view of the conclusion we have reached, to consider them in detail. On these points, in our opinion, the evidence presents questions of facts for the consideration of a jury. As to the risk, we think the clear preponderance of the evidence is that it was assumed by appellee.

From a careful reading and consideration of the evidence on the question of appellant's negligence, we are of opinion that it is clearly insufficient to justify a recovery by the appellee, and for that reason a verdict for the appellant should have been directed.

There are six counts in the declaration, in the first of

which the negligence alleged is that the defendant, disregarding its duty, supplied to plaintiff a highly explosive fuel; in the second, there is the same allegation in substance, and in addition, the charge that defendant ordered the plaintiff to use and burn said fuel; in the third the allegation is the same in substance as the first, with the addition that the defendant had knowledge of the unsafe and explosive nature of the fuel, but neglected to inform plaintiff thereof; in the fourth count the allegation is the same as in the first, in substance, and besides, that the defendant failed to ascertain and inform plaintiff of the unsafe and highly explosive nature of the fuel; and in the fifth and sixth counts the allegations are in substance and effect the same as the first, though differing somewhat in their wording.

It appears from the evidence that plaintiff was an experienced fireman, and for eleven months prior to the accident had worked for appellant as such, at the boilers, ten in number, which were arranged side by side, and it was his custom to work in the firing of boilers Nos. 1 to 8. His foreman was Herbert Brown. On the morning in question he worked at boiler No. 9, the foreman at No. 10, and Jake Mathey at No. 8. The ordinary fuel used in the boilers was coal and wood, and appellee's regular work was to fire with coal and wood. He says he fired three days with coal and one day with wood, used all kinds of wood, railroad ties and all stuff that came from repairing cars. Before the day of the accident he says he had never fired dust such as he did that morning, but sometimes used shavings in connection with wood. Boiler No. 10 was ordinarily used for burning shavings and dust, when such material was used for fuel, which was seldom—once in two or three months. It seems that the sawdust from the planing mill, with some shavings mixed in it, was conveyed to and stored in a box about eighteen or twenty feet long by thirteen or fifteen feet wide, which became filled once in two or three months, when it was necessary to have it cleaned out, and when cleaned out was usually burned in boiler No. 10, because it

was the most convenient.   The boilers were all alike.   On
the morning in question it was necessary to clean out this
box, and the foreman, assisted by appellee and Mathey,
used the contents of the box in firing boilers numbers 8, 9
and 10.   Appellee was directed by the foreman to assist in
the work, he having been engaged to use any kind of fuel,
as he says, " that came along—that I had orders to burn,"
though it seems he had never burned this kind of fuel before
that time.   This fuel had  been used twice before without
any accident or explosion.   The contents of the box were
placed in front of the boilers, and with shovels, thrown into
the boilers, and pushed back by the firemen with a hoe hav-
ing a handle nine or ten feet long, such as firemen use.
Each time when the material was thrown into the furnace,
and when it was pushed back, the flame would rush out of
the front of the boiler.   The firemen had to exercise care
in order not to be burned by the flame when it rushed out.
Appellee had worked with this fuel some two or three hours
that morning before the accident.

The foreman, Brown, testifies, in describing the manner
and circumstances of the accident and the previous use of
this fuel, as follows :

" Q.   Is that common in furnaces ?   A.   That was com-
mon in this stuff we had to fire.   Three of us fired with
dust that day, and the flames came out of all the doors.
None of the rest of us were burned.

Q.   Where was the explosion—in the furnace or out-
side of the furnace ?   A.   Outside of the furnace.   We
were working in the dust and naturally we raised the dust
itself by moving and stirring it up with our feet.   I simply
mean that the dust caught fire outside of the fur-
nace. ' There was no explosion like an explosion in a mill.
The dust around there caught fire and burned until it burned
up.   I stood at boiler No. 10, Schumann at No. 9, and
Mathey at No. 8.   I escaped by jumping to the left and
Mathey to the right, but where Schumann stood was the
main pile of dust.   We were all throwing from that
pile.   The flame came out of the door and the dust caught
fire outside.   The box in the building caught fire, but they
had it out in a couple of minutes.   We had quite a heap of
dust and we wanted to get rid of it.   We fired—to use your

own judgment—as hard as we could. That was not by orders. I didn't work steadily that morning, but occasionally. The explosion, or whatever it was that burned Schumann, was outside of the fire-box.

Q. Describe how that happened there as you saw it. A. Every time I or Schumann or anybody else threw in a shovel of that stuff the flues were not big enough to receive the whole thing, and the draft wouldn't take it, and it had to go somewhere, and it came back to the door and backed up, and then it would only last for one or two seconds and it went back again. This box had been cleaned out about three months before, and the same stuff had been burned then. I do not remember exactly who burned it at that time; Schumann did not assist. We never had any explosion before. In burning it two or three months before there was the same backing out of the flames such as caused the burn to Schumann; I saw it. There was no one ever hurt by it. We were shoveling in the dust pretty lively; Mathey, Schumann and I all worked about the same way. I am not now employed with the Illinois Central, but am working at the Rookery building. We had cleaned out this box twice before. I do not remember that Schumann was there at that time. If I recollect rightly, there was an extra man there that day, but there is nothing which fixes that fact in my mind. I could not make any positive statement whether Schumann was there or not. Anyhow, the dust was all burned in the furnace both times before. I did not anticipate any danger or that anything would happen, nor did I have any reason to believe for a moment that this stuff was dangerous. We had burned it before all right both times the box was cleaned out. Nothing happened either time. On this particular occasion we fired about two hours, and the only difference from any other time was, we were shoveling pretty hard and fast. The fact that we were rushing through and throwing it into the furnace pretty fast was presumably the cause of the accident. I don't think it could be helped in a certain way; the flame would come out anyhow. Schumann had shoveled in quite a pile of this stuff right at the mouth of the furnace, and then he picked up his hoe and started to push back this big pile, and just as he started to do this the big flame pushed out. The proper way was to have stood to one side in order to have got rid of the flame; because when you are standing right in front of the furnace it would not be safe."

With regard to the use of this fuel and the possibility of its explosion, appellee testified as follows:

"I knew that the proper way to have used a hoe of that kind would have been to have distributed the fuel in the furnace lightly without pushing it back with the hoe. I never heard of any explosions occurring before, and the man at the furnace right next to me was using the same kind of fuel. That was Brown."

On the same matter Mathey, the other fireman, testified as follows:

"Schumann had just put in quite a pile of this in the furnace door and then had taken a hoe and started to push that back when these flames came out. We had been using this stuff right along for about two hours and a half, and had no trouble, except once in a while the flame came back, but I always shoveled away. I saw no trouble, however, so far as Brown was concerned, and I had no knowledge that this stuff was dangerous at all. We were firing it as ordered, in apparent safety. I hadn't seen any danger during any other time when we fired it."

The foregoing is, in substance, all the evidence with reference to the nature of the fuel, its use, and the circumstances of the accident.

In order to show negligence of the appellant, it was necessary that the evidence establish not only that the fuel used was dangerous, but that appellant had notice thereof, or in the exercise of ordinary care should have had knowledge of its dangerous character. Goldy v. Werner, 151 Ill. 551-8; Howe v. Medaris, 183 Ill. 288-90; R. R. Co. v. Wilson, 189 Ill. 89-98.

Even if it could be said from this evidence, in the light of the occurrences shown thereby, that this fuel was dangerous, that fact was not known to appellant nor to its foreman, and in the exercise of ordinary care it seems that neither appellant nor its foreman should have known of that dangerous character. It had been used on at least two different occasions before without ill results, and on the morning in question had been used between two and three hours by three different men, all experienced firemen, none of whom had ever known or heard of such an accident as the

one in question. In fact no one of them anticipated any such result, nor was it reasonably to be expected. This accident can not be said to have been reasonably in the anticipation of appellant nor its foreman, and consequently there was no right of recovery. Braun v. Craven, 175 Ill. 401–5, and the numerous cases there cited.

Being of opinion that the evidence fails to show any actionable negligence, the judgment is reversed without remanding.