# The Chicago and Alton Railroad Company

## v.

# John Scanlan.

*Opinion filed November 1, 1897—Rehearing denied December 20, 1897.*

1. Pleading—*when added count states a new cause of action—limitations.* A new count added to a declaration for personal injury originally alleged to have been caused by the faulty construction of a scaffold, which charges that the injury was caused by the negligent overloading of the scaffold, states a new cause of action, and, if filed more than two years after the injury, is obnoxious to the plea of the Statute of Limitations.

2. Appeals and errors—*harmless error will not reverse.* Error in sustaining a demurrer to a plea of the Statute of Limitations interposed to a new count added to a declaration in a personal in-

jury case is not ground for reversal, where such count is abandoned at the trial and no evidence given thereunder.

3. MASTER AND SERVANT—*elements necessary to warrant recovery for injury from defective appliances.* To warrant a recovery for injuries received by a servant from defective appliances the servant must show the existence of the defect, that the master knew or should have known of its existence, and that the servant did not know of the defect or have an equal means of knowledge with the master.

4. SAME—*duty to furnish safe appliances is a positive obligation.* The master's duty to his servant to furnish a reasonably safe structure or scaffold on which to work is a positive obligation, and the master is liable for the negligent performance of that duty, whether he undertakes its performance personally or through another servant. And this is true although such other servant might, for other purposes, be a fellow-servant.

5. SAME—*when foreman's knowledge of defects is chargeable to master.* Knowledge by the foreman of a gang of carpenters of the defective condition of a scaffold which he had aided in erecting for the use of brick masons is chargeable to the master.

6. FELLOW-SERVANTS—*what necessary to constitute the relation of fellow-servants.* To constitute the relation of fellow-servants it is essential that they be actually co-operating, at the time of the injury, in the particular work in hand, or that their usual duties should throw them into habitual association, so that proper caution would likely result.

*Chicago and Alton R. R. Co.* v. *Scanlan*, 67 Ill. App. 621, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

JAMES H. TELLER, for appellant:

The servant, in order to recover for defects in the appliances of the business, must establish that the appliance was defective, that the master had knowledge thereof or ought to have had, and that the servant did not know of the defect and had not equal means of knowing with the master. *Goldie* v. *Werner*, 151 Ill. 551.

It is error to suppose that a force of men cannot be engaged in a common service unless all are continuously working at the same time and engaged in doing precisely

the same kind of work. It is sufficient that they are all actually employed by the same master, and that the work of each, whatever it may be, has for its immediate object a common end or purpose, sought to be accomplished by the united efforts of all. *Abend* v. *Railroad Co.* 111 Ill. 202.

The builders of a scaffold about a ship and the riveters using the scaffold are fellow-servants. *Butler* v. *Townsend,* 126 N. Y. 105; *Beezley* v. *Wheeler Co.* 61 N. W. Rep. 658.

Stone masons and carpenters working for a common master in the building of a bridge are fellow-servants. *Bier* v. *Railway Co.* 31 N. E. Rep. 471.

Brick masons and carpenters working together upon a building are fellow-servants, where all are under charge of a foreman and employed by a common master. *Armour* v. *Hahn,* 111 U. S. 313.

Willard Gentleman, and Edwin W. Sims, for appellee:

The duty to exercise reasonable care to see that the place furnished for a servant to work is reasonably safe is a positive obligation toward the servant, and the master is liable for any failure to discharge that duty, whether he undertakes that performance personally or through another servant. *Hess* v. *Rosenthal,* 160 Ill. 628; 55 Ill. App. 324; *Railroad Co.* v. *Godfrey,* 155 Ill. 82; Wood on Master and Servant, sec. 329; Shearman & Redfield on Negligence, secs. 87-92; Cooley on Torts, 561; *Mayhew* v. *Mining Co.* 76 Me. 100; *Railroad Co.* v. *Swett,* 45 Ill. 197; *Railroad Co.* v. *Welch,* 52 id. 183; *Railway Co.* v. *Conroy,* 68 id. 567; *Railway Co.* v. *Ingraham,* 77 id. 309; *Brick Co.* v. *Sobkowiak,* 184 id. 573; *Cribben* v. *Callaghan,* 57 Ill. App. 545; *Steel Co.* v. *Schymanowski,* 59 id. 33.

The master must furnish suitable means, appliances and instrumentalities for the performance by the employee of the labor required. *Syrup Co.* v. *Carlson,* 155 Ill. 215; *Monmouth Mining Co.* v. *Erling,* 148 id. 521; Wood on

Master and Servant, sec. 329; Cooley on Torts, p. 559, sec. 7; *Railroad Co.* v. *Wangelin*, 43 Ill. App. 324.

The duty of furnishing safe appliances and a safe place to work is non-assignable, so as to relieve the master from liability. *Railroad Co.* v. *Kneirim*, 152 Ill. 464; *Rice* v. *Paulsen*, 51 Ill. App. 126; *Goldie* v. *Werner*, 50 id. 300; *Norton* v. *Volzke*, 158 Ill. 402; 54 Ill. App. 545; *Railroad Co.* v. *Godfrey*, 155 Ill. 82; *Stringham* v. *Stewart*, 100 N. Y. 516; *Benzing* v. *Steinway*, 101 id. 552; *Pantzar* v. *T. F. I. M. Co.* 99 id. 369; *Kranz* v. *Railroad Co.* 123 id. 4; *Moynihan* v. *Hills*, 146 Mass. 582.

An employee has the right to act upon the theory that his employer has used reasonable diligence to provide reasonably safe appliances; and, himself using ordinary care, if his attention has not been called to a defect or danger, and the same is not obvious, he is not chargeable with notice of insecurities which only could be discovered by careful inspection. *Rice* v. *Paulsen*, 51 Ill. App. 124; *Goldie* v. *Werner*, 50 id. 297; *Railroad Co.* v. *Walter*, 45 id. 642; Wood on Master and Servant, sec. 385; *Patterson* v. *Railroad Co.* 76 Pa. St. 389.

The master or his foreman will be presumed to know and be familiar with the dangers, latent and patent, ordinarily accompanying his business. The law will imply and infer notice of any defect which, by the use of ordinary care, might have been known to the master. Wood on Master and Servant, secs. 330, 347; *Coal Co.* v. *Haenni*, 146 Ill. 625; *Smith* v. *Car Works*, 50 Mich. 504; *Coombs* v. *N. B. C. Co.* 102 Mass. 572.

To constitute persons fellow-servants it is essential that, at the time it is claimed such relation exists, they shall be directly co-operating with each other in the particular business at hand, or that their usual duties shall bring them into habitual association, so that they may exercise an influence upon each other promotive of proper caution. *Railroad Co.* v. *Moranda*, 93 Ill. 302; 108 id. 576; *O'Leary* v. *Railroad Co.* 52 Ill. App. 643; *Railroad Co.* v.

*Kneirim*, 152 Ill. 466; *Rolling Mill Co.* v. *Johnson*, 114 id. 57; *Stafford* v. *Railroad Co.* id. 244; *Railroad Co.* v. *Geary*, 110 id. 383; *Railroad Co.* v. *Snyder*, 117 id. 376; 128 id. 655; *Railroad Co.* v. *Hoyt*, 122 id. 369; *Steel Co.* v. *Shields*, 134 id. 209; *Railroad Co.* v. *Kelly*, 127 id. 637; *Coal Co.* v. *Holmquist*, 152 id. 591.

Mr. Justice Craig delivered the opinion of the court:

This was an action brought by John Scanlan, against the Chicago and Alton Railroad Company, to recover for a personal injury received while in the employ of the railroad company as a brick mason, in building a round-house in Chicago. While the plaintiff, with others, was working on the round-house, a scaffold upon which he was standing gave way and he was thrown to the ground, a distance of twenty-five feet, and injured.

The original declaration contained one count, in which it was averred that the scaffold broke and fell owing to its faulty and improper construction by the defendant. Subsequently, but after the expiration of two years, plaintiff, by leave of the court, filed an amended declaration, consisting of two counts. In the first count plaintiff set up the defective construction of the scaffold of poor material, substantially as was done in the original declaration. In the second count the negligence charged was that the scaffold was overloaded by the defendant. To the amended declaration the defendant pleaded the Statute of Limitations, to which the plaintiff demurred and the court sustained the demurrer, and this decision of the court is relied upon as error.

As to the first count of the amended declaration, it was but a mere re-statement of the cause of action as set out in the original declaration, and, as has been often held, the Statute of Limitations was not a good defense. As to the second count of the amended declaration, we are inclined to the opinion that it set up a new cause of action, and the Statute of Limitations was a good defense to the matters therein set up for the first time during

the progress of the case. But on the trial no evidence whatever was introduced under this count, and while the court erred in sustaining a demurrer to the Statute of Limitations pleaded to this count, it was an error that did no harm, as the count was abandoned on the trial of the cause.

It is next claimed in the argument that the court erred in refusing, at the close of all the evidence, to direct a verdict for the defendant. In *Goldie* v. *Werner*, 151 Ill. 551, following the rule laid down in Wood on the Law of Master and Servant, it was held that a servant, in order to recover for an injury for defects in the appliances used in the business, is required to establish three proposi-. tions: First, that the appliances were defective; second, that the master had notice thereof, or knowledge, or ought to have had; and third, that the servant did not know of the defect and had not equal means of knowing with the master. It is claimed by counsel for the appellant that there is no evidence in the record tending to establish either the second or third proposition.

It is apparent from the evidence that the scaffold was defective, and, as constructed, unsafe. Daniel Glennon testified: "I noticed the scaffold that fell; it was not built strong enough; the uprights were old telegraph poles; I had my attention called to the foot-locks that morning by a bricklayer that was looking for a job; there was not enough of them; * * * there should be four or five foot-locks; * * * on the scaffold that fell there was only three; * * * there were no braces at all under the foot-locks." Patrick Farrell says: "There were pieces cut to put on under the foot-locks, for to hold them up, about two feet long, and nails put in them; it was too late Saturday evening to put them in and they were thrown up; them pieces were not put on; they were thrown up on the top of the scaffold until Monday morning—three pieces that should go under; I saw those pieces cut and got ready to put in a certain place on that scaffold, and

they were not put in on Saturday night." Thomas Roach says: "I saw there was no bracing under the foot-locks; the outside upright where it gave away was an old telegraph pole."

In regard to the second proposition,—that plaintiff must introduce evidence tending to prove that the master had notice of the defect, or knowledge, or ought to have had,—it appears from the record that on May 15, 1893,— the day the scaffold fell,—appellee was one of six bricklayers working on a scaffold in a round-house being built for the appellant. The scaffold, which was one of a series built around the round-house for the use of the bricklayers, had been put up on Saturday, May 13, by two carpenters in the employ of the appellant. Paul Ryan was foreman of the bricklayers and John N. Eisinger was foreman of the carpenters. The latter and a man named Kelly put up that part of the scaffold on Saturday afternoon which fell on Monday morning. The evidence tends to show that the carpenters who were erecting the scaffold quit work at 5:20 o'clock Saturday afternoon in order to catch a train which left at that hour for their homes, before they had entirely finished the scaffold. The braces were not put under the foot-locks. They were prepared and nails driven into them, and then thrown up upon the scaffold. The carpenters, no doubt, intended to return early Monday morning before the bricklayers commenced work, and nail on the foot-locks, but the carpenters did not get back until after eight o'clock,—the hour when the masons were called to go upon the scaffold and resume work. Appellee was employed by the railroad company to work as a bricklayer on the round-house it was erecting. It was the duty of the railroad company to exercise reasonable care to see that the scaffold provided for its employees to work upon was reasonably safe. That duty was entrusted to Eisinger, the foreman or vice-principal of the defendant. Whatever knowledge Eisinger, the foreman, possessed in regard to the defect in the scaffold

the railroad company is chargeable with. Here Eisinger assisted, as foreman, in the erection of the scaffold, and knew, or was bound to know, its defects and imperfect construction, and as he stood in the place of the railroad company, it follows that the company had notice. (*Goldie* v. *Werner, supra.*) In *Hess* v. *Rosenthal*, 160 Ill. 621, following the rule laid down in Wharton on the Law of Negligence, (sec 211,) it was held that the duty to exercise reasonable care to see that the place furnished for a servant to work in is reasonably safe is a positive obligation toward the servant, and the master is liable for any failure to discharge that duty, whether he undertakes that performance personally or through another servant. We think there was ample evidence introduced by plaintiff tending to prove the second proposition, that the master had notice of the defective condition of the scaffold.

As to the third proposition,—that appellee did not know of the defect and had not equal means of knowing with the master,—it will only be necessary to allude briefly to the facts. It appears that in working on the round-house, as soon as the brick masons finished one part of the wall they moved on around the building to another part, where, in the meantime, the gang of carpenters had erected a scaffold for their use. They had neither time nor opportunity to inspect every new piece of scaffold that was erected. Moreover, on the morning the scaffold fell appellee had gone upon the roof of the round-house on a ladder, which was on the side of the round-house opposite the scaffold, and when the foreman in charge of the work called time at eight o'clock, appellee stepped down from the roof onto the scaffold, and so had no opportunity of examining the same and knew nothing of its defects.

But it is said that the carpenters who constructed the scaffold were fellow-servants of the bricklayers. If that were conceded to be true, the fact would not absolve appellant from liability. The duty to use reasonable care

1:0— 8

for the safety of the structure upon which appellee was required to work was one owing directly by appellant to appellee, of which it could not divest itself by any delegation to others, and the rule in that regard is quoted above from the opinion in *Hess* v. *Rosenthal.* In such a case the duty rests upon the master, and a negligent performance of it is his negligence, by whomsoever performed. *Bricker* v. *New York Central Railroad Co.* 2 Lans. 506; *Chicago and Northwestern Railway Co.* v. *Jackson,* 55 Ill. 492; *Columbus, Chicago and Indiana Central Railway Co.* v. *Troesch,* 68 id. 545; *Chicago and Northwestern Railway Co.* v. *Swett,* 45 id. 197; *Chicago, Burlington and Quincy Railroad Co.* v. *Avery,* 109 id. 314; *Monmouth Mining and Manf. Co.* v. *Erling,* 148 id. 521; *Mobile and Ohio Railroad Co.* v. *Godfrey,* 155 id. 78; Cooley on Torts, 561.

It is also claimed that the court erred in giving and refusing instructions. Under this head it is claimed in the argument that the second proviso of plaintiff's first instruction was liable to mislead the jury. We do not concur in that view. It reads: *"Provided, also,* the jury believe, from the evidence, that the defendant failed to exercise reasonable care in making the scaffold safe, if the jury believe, from the evidence, that it was not safe," etc. It is said, although the scaffold was safe as constructed on Saturday, yet if it had been tampered with between that time and the time of the accident the jury might conclude defendant was negligent, unless it was shown to have used some care in restoring it to a safe condition. From the language of the proviso we do not think any such inference as suggested could be drawn.

What has been said concerning the doctrine of fellow-servants disposes of the alleged error in refusing appellant's last instruction, relieving it from liability if the carpenters were found to be fellow-servants of appellee. It was not error to refuse the instruction.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*