## McCormick Harvesting Machine Company v. Frank Zakzewski.

### Gen. No. 11,978.

1. ASSUMED RISK—*what not.* The risk of the possible falling of a pile of lumber is not one of the usual and ordinary risks incident to the employment of one engaged at work in a lumber yard.

2. SERVANT—*right to assume place of employment safe.* A servant has a right to assume, unless the contrary is obvious, that the place in which he is directed to work is reasonably safe.

3. NEGLIGENCE—*when presumption of, arises.* Where a pile of lumber falls without its having been touched by any one, a presumption of negligence arises in favor of a servant against his master.

4. MASTER—*cannot delegate primary duties.* The master cannot shirk or shift to another the duty of furnishing to his servant a reasonably safe place to work; he cannot devolve that duty upon a fellow-servant of the injured servant so as to avoid responsibility for his failure to perform his duty.

5. RELEASE—*when question as to whether, fraudulently obtained, should be sent to jury.* It is proper to submit to the jury, to determine as a question of fact, whether a release, averred as a bar to the action, was obtained by fraud and misrepresentation, where the evidence with respect to such matters is conflicting.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. WILLARD McEWEN, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed May 29, 1905.

**Statement by the Court.** Appellee sued appellant in case, for personal injuries, and recovered judgment for $1,350. The declaration contains four counts. Appellant pleaded the general issue. The accident causing the injury of which the plaintiff (appellee here) complains occurred about two o'clock in the afternoon of February 20, 1901, in the defendant's lumber yard. Plaintiff was then about fifty years of age. There were two piles of lumber in the yard, which were being transferred to trucks, at the time of the accident. These piles had been constructed under the orders of Herman Krempski, appellant's foreman. The piles lay north and south, lengthwise the lumber. The evidence of the plaintiff's witnesses varies as to the width of

the space between the piles, from 1 to 2½ inches. The evidence tends to prove that the lumber in the east pile was 3¼ by 4½ inches and 14 feet long, and that in the west pile 4 by 4 inches and 13 feet long, and that the lumber in the piles was green, or partly so, and heavy, and was icy and slippery, and that the piles were each from 3 to 4 feet in width and about 7 feet high; also that there were no cross-pieces in the piles, and that it was the defendant's custom to put cross-pieces in piles 7 feet or more in height. The evidence is uncontradicted that neither the plaintiff, nor Jerosal, who was working with plaintiff at the time of the accident, constructed the piles, but that they were constructed by Krempski's direction, by other employees of the defendant about an hour before the accident. Plaintiff's evidence is that Krempski told the plaintiff, Jerosal and one Smith to go to work removing the east pile, which they did, plaintiff and Jerosal removing the lumber from the pile and Smith placing it on a truck, which was on a track on the north side of and close to the pile. Plaintiff and Jerosal got on top of the east pile to remove the lumber from it, the pile being too high for them to reach and remove it, standing on the ground, and when they had removed about four feet from the pile, the remainder of it being then about three feet high from the ground, they got down on the ground and were taking the lumber from the remainder of the pile, when the west pile fell eastward on appellee and broke his right leg a few inches above the ankle. The uncontradicted evidence is that neither appellee nor Jerosal touched the west pile.

W. T. UNDERWOOD, for appellant.

GEORGE F. BARRETT, for appellee; CHARLES V. BARRETT, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's contentions are as follows, and will be considered in the order stated:

1. That appellee assumed the risk of the east pile falling.

It cannot be reasonably contended that the risk of a pile of lumber, 7 feet in height and from 3 to 4 feet in width, falling, was one of the usual and ordinary risks incidental to plaintiff's employment, or which, in view of the evidence, was open and obvious to him. An employee or servant does not assume a risk which is owing to the master's negligence in not furnishing him with a reasonably safe place in which to work.

In Consolidated Coal Co. v. Haenni, 146 Ill. 614, 623, the court say: "When the master fails to furnish suitable machinery and to see that it is properly protected, or to employ careful and prudent persons to manage and operate such machinery, the risks resulting from such failure are extra hazardous, and such extra hazards are not among the risks, which the employee assumes, as a part of his contract of service."

The duty of the master to furnish his servant with a reasonably safe place in which to work is a personal duty, and cannot be shifted to another, so as to relieve the master of responsibility for failure to perfrom that duty. Libby, McNeill & Libby v. Scherman, 146 Ill. 541; C. & A. R. R. Co. v. Scanlan, 170 Ill. 106, 114; Ill. Steel Co. v. Schymanowski, 162 ib. 447; Whitney v. O'Rourke, 172 ib. 177.

The servant has the right to assume, unless the contrary is obvious, that the place in which he is directed to work is reasonably safe. In Ill. Steel Co. v. Schymanowski, *supra,* the court say, p. 459: "When the master orders the servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary peril. The servant has a right to rest upon the assurance that there is no danger which is implied by such an order." See, also, Offutt v. Columbian Exposition, 175 Ill. 472. In the present case, the order to work on the east pile was given by Krempski, appellant's foreman and its direct representative, and was, in law, appellant's order. Ill. Steel Co. case, *supra,* p. 456.

But appellant's counsel contend that appellee was familiar with the manner of piling, saw the pile which fell, and, by

the exercise of ordinary care, might have known of its condition. This contention has no basis in the evidence. The uncontradicted evidence is that the west pile was straight and looked all right, except that one witness states that it was too high and too narrow. Even appellant's counsel says of the piles, in his argument: "They were straight; they looked all right, and there was nothing to indicate any act of negligence or carelessness on the part of appellant, or any of its employees, in the making of these particular stacks." The defect, therefore, which caused the west stack to fall was latent, and could not have been discovered by appellee prior to the accident. Besides, it was not incumbent on appellee to inspect the west pile. He had a right to assume that the place in which he was ordered to work was reasonably safe, and there was no apparent reason for disobeying the order given him. It was not part of his duty to inspect the conditions, or to do anything except to work as well as he could, under the directions of his foreman. Ill. Steel Co. v. Schymanowski, 162 Ill., p. 455.

2. Counsel for appellant contends that the stacks were so close together, viz.: from one inch to two and one-half inches apart, that the two were substantially one stack, so that the west stack could not have fallen, unless by the lowering of the east stack, and cites cases to the effect that the risk necessarily incurred in taking down or erecting a building is assumed by an employee engaged in the work. The statement that the piles were so close together that the taking down of one caused the other to fall, has no support in the evidence, which is, as stated by counsel, that the piles were from one to two and one-half inches apart, which necessarily means that they did not touch or come together anywhere. Appellee and Jerosal, who was working with appellee on the east pile, both testified that, when they were removing the lumber from the east pile they did not touch the west one. Therefore, the cases cited by counsel have no application. It is obvious, we think, that unless the piles were in contact, so that each supported the other, the taking down of one, without touching the other, would not

affect the other. Appellant's counsel, in another place in his argument, says: "There is no evidence in the record whatever as to what caused the west stack to fall."

3. Counsel urge that a servant cannot recover, on the ground that there was a safer way of doing the work (in which we concur), and says, in substance, that if there was any safer way than that used, it does not appear from the evidence, and also says: "There is no evidence to show that the manner of making the stacks was any departure from the usual manner of making stacks in this lumber yard." One of plaintiff's witnesses testified that the west stack was too high and too narrow; another, that cross-pieces were always used in appellant's yard, in case of a pile 7 feet high, and over that height, and 3 or 4 feet in width. This evidence is uncontradicted. It is also in evidence, without contradiction, that there were no cross-pieces in the pile which fell. We are of opinion that the mere falling of the west pile, without its having been touched by any one, is, of itself, evidence of negligence in the construction of the pile. In Chicago City Ry. Co. v. Barker, 209 Ill. 322, 326, the court say: "The meaning of the maxim *res ipsa loquitur* is that, while negligence itself is not, as a general rule, to be presumed from the occurrence of the injury, yet the injury itself may afford sufficient *prima facie* evidence of negligence, and the presumption of negligence may be created by the circumstances under which the injury occurred," and the court quote with approval the following from an English case: "There must be reasonable evidence of negligence. But, when the thing is shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management, use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care."

In Hartford Deposit Co. v. Sollitt, 172 Ill. 222, in which the plaintiff was injured by the fall of an elevator, the court say: "The fact of the falling of the elevator is evidence tending to show want of care in its management by the oper-

ator, or its servants, or that the same was out of repair or faultily constructed." Springer v. Ford, 189 Ill. 430, is to the same effect. McGregor v. Reid, Murdoch & Co., 178 Ill. 464, was case for an injury occasioned to the defendant's servant by the fall of an elevator, and the court say: "Appellee is not liable, however, on the facts proved, as a common carrier of passengers, but, if at all, only for its failure to use that degree of care which the law required that it, as master, should exercise, in providing a safe means of transit for appellant, as its servant, from one to another of the several floors of its building, to and from which it was necessary for him to pass in the performance of his duties," citing McDonough v. Lanpher, 57 N. W. Rep. 152. Here, the appellee was a servant of appellant, and the latter's duty was to furnish to him a reasonably safe place in which to work, and the failure so to do the jury was warranted in finding was negligence.

4. It is contended that the pile was put up by fellow-servants of appellee, and therefore appellant is not liable. It follows from the rule, heretofore stated, viz.: that the master cannot shirk, or shift to another, the duty of furnishing to his servant a reasonably safe place to work; that he cannot devolve that duty on a fellow-servant of the injured servant, so as to avoid responsibility for his failure to perform his duty, and so are the decisions.

In C. & A. R. R. Co. v. Scanlan, 170 Ill. 106, 114, the court uses this language: "But it is said that the carpenters who constructed the scaffold were fellow-servants of the bricklayers. If that were conceded to be true, the fact would not absolve appellant from liability. The duty to use reasonable care for the safety of the structure, upon which appellee was required to work, was one owing directly by appellant to appellee, of which it could not divest itself by any delegation to others, and the rule in that regard is quoted above from the opinion in Hess v. Rosenthal. In such a case the duty rests upon the master, and a negligent performance of it is his negligence, by whomsoever performed,"

citing numerous cases. To the same effect is Ill. Steel Co. v. Schymanowski, 162 Ill. 447, 456.

5. Counsel urge that the evidence, with all legitimate inferences from it, is insufficient to support the verdict, and that the court should have instructed the jury, on appellant's motion, to find for appellant. Our conclusion from the evidence is, that it fully sustains the verdict.

6 and 7. The sixth and seventh contentions are, in substance, that facts are not averred in the declaration showing any duty incumbent on appellant toward appellee. We have examined the declaration and find it substantially sufficient.

8. The following release, purporting to be executed by appellee, was put in evidence by appellant:

"Know all men by these presents, that I, Frank Zakzewski, alias Novak, of the City of Chicago, County of Cook and State of Illinois, for the valuable consideration of McCormick Company to pay my hospital bill, to me in hand paid by McCormick Harvesting Machine Company of the same place, the receipt whereof is hereby acknowledged, do hereby release and forever discharge the said McCormick Harvesting Machine Company from, all claims and demands, and each and every and all right, cause and causes of action, of every name, nature and description whatsoever, which I now have or which has accrued in my favor against it, the said McCormick Harvesting Machine Company, arising or growing out of or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date hereof.

Witness my hand and seal this 21st day of February, A. D. 1901.

his
FRANK X ZAKZEWSKI. (Seal.)
Witnesses: mark
Dr. J. C. Hollister,
A. H. Brown."

It was contended by appellee that the execution of the instrument was fraudulently obtained. Anson H. Brown, appellant's claim agent, testified, in substance, that he saw

appellee at St. Luke's hospital about two o'clock in the after-
noon the next day after the accident, and had with him
Jacob Jerosal, a Pole, as interpreter in the Polish language,
and had a conversation with appellee through said interpreter; that witness had the release in his hand and read
from it a few words at a time, and Jerosal interpreted the
release to appellee, after which witness asked appellee if he
understood the paper, and he said, through the interpreter,
that he did. He said he could not write his name, and he
signed the paper by making a cross, and Dr. Hollister and
I signed it as witnesses. This witness further testified, in
substance, that after appellee left the hospital, witness talked
with him on two occasions, through interpreters, at appellant's works, and each time appellee asked for $25, which
witness refused, saying that appellee had settled and signed
a release, and that, on one of these occasions, appellee said
he had signed a release at the hospital, and that he thoroughly understood it when he signed it. On cross-examination witness testified that he asked Jerosal to go with him,
as interpreter, but does not know that he told him his ultimate mission when they started, but did tell him on the way
to the hospital; that at the hospital witness told Jerosal to
interpret the release to appellee, and that Jerosal held the
paper in his hand from ten to fifteen minutes; that witness
knew what Jerosal said to him, but not what he said to appellee, and Jerosal told witness that appellee understood
the paper and was willing to sign it. Witness further testified that after the suit was commenced he told one Belinski
to ask appellee if he would sign a stipulation to dismiss his
suit for $50, and that Belinski reported to witness that appellee said he would, but was afraid of his attorney, etc.

Jerosal, the interpreter, testified, in substance, that Brown
did not ask him to go to the hospital as an interpreter, that
he did not know that he was going to the hospital, but only
that they were going to see appellee; that when they arrived
where appellee was, in the hospital, appellee was asleep, and
witness waked him; that Brown read nothing, but merely
told witness to explain to appellee that the McCormicks

3

wanted to know whether appellee would stay in the hospital, the McCormicks to pay his expenses; that he could stay there till everything was all right and then come back to work, and appellee said: "I don't know; well, I will sign for that expense." Brown did not tell me this was a release for all damages, and to tell appellee he was giving up all claim against the McCormick people. On the release being read to witness, he said that he never heard it before. Witness further testified that Brown did not ask him whether he could read English, and that he, witness, could not read or write English. On cross-examination witness said that he never, before the trial, saw the release, and that it had never been read to him by any one. Jerosal's testimony as to what occurred at the hospital is substantially corroborated by that of appellee. There was some other evidence, but the evidence, as a whole, was conflicting, and it was a fair question for the jury, whose province it is to pass on the credibility of the witnesses, to determine on which side the truth was. Chicago City Ry. Co. v. McClain, 211 Ill. 589, 595.

The fact of appellant's unseemly haste, in having its claim agent follow appellee to the hospital, with a release in his pocket prepared for signature, the very next day after the accident, was not likely to induce in the minds of the jury an impression favorable to appellant; nor was the fact that appellant, by its claim agent, undertook to settle the damages for a broken leg for the wholly inadequate sum of $27, which the evidence shows was the total of the hospital expenses; nor was the fact that appellant's claim agent, as he testified, endeavored to procure the dismissal of the suit for $50. If appellant had a valid release, as it claims, why did it offer to so induce dismissal of the suit? It is not an unreasonable inference that it doubted the validity of the release.

It is not contended, in appellant's argument, that the sum awarded as damages is excessive.

The judgment will be affirmed.

*Affirmed.*