DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEARS 1907 AND 1908.

---

### Eagle Brewing Company v. John J. Luckowitz.

### Gen. No. 13,538.

1. MASTER AND SERVANT—*what proof essential to recovery by latter.* The rule is that before a servant can recover for injuries caused by defective appliances, he must prove that the appliance was defective, and in what the defect consisted; that the master had, or might have had, in the exercise of ordinary care, notice of such defect, and that the servant neither knew of the defect nor had equal means of knowledge with the master.

2. MASTER AND SERVANT—*when duty of former to furnish reasonably safe place to work fulfilled.* The duty of the master to furnish a reasonably safe place for a servant to work is fulfilled when he has used ordinary care in furnishing appropriate appliances which are ordinarily safe when properly used. The fact that machinery may be dangerous when improperly used, or that an accident happens to the servant in its use, is not a test of liability.

3. RES IPSA LOQUITUR—*when doctrine of, does not apply.* The doctrine *res ipsa loquitur* does not apply as between master and servant.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. RICHARD W. WRIGHT, Judge, presiding. Heard in this court at the March term, 1907. Reversed. Opinion filed December 23, 1907.

**Statement by the Court.** This is an action on the case for personal injuries. Appellant, as its name indicates, is a brewer of beer, and appellee was chief en-

(131)

gineer in its employ at the time of sustaining the injuries for which he seeks compensation in this suit. Stanley S. Sisnowski was brew master in charge of the brewery. John Maslowski was assistant engineer and worked at night, while appellee worked during the day. Appellee testified that his duties were to care for all of the machinery and keep it in repair. That in the brew-house there was an engine and an ice machine and also an engine that was kept running all the time. In the engine house there was a pump and a small upright engine which drove the barrel-washers. In another brew house there was a brine pump and a beer pump and an air compressor. There was also a beer pump on the second floor.

For several weeks before the accident the vats in the cellar were being varnished on the inside. The varnish had to be thoroughly dried. To do this drying a small gas stove placed inside the vat was used. This gas stove had a nipple over which was placed a rubber hose, wrapped with wire, tightly squeezed into the hose with tweezers. This hose ran from the stove to a gas pipe in the cellar outside of the vat. The outside connection was made with a brass coupler.

On the night preceding the accident the gas burners were burning. Maslowski, the night engineer, was in charge during the night. He died before the trial. The proof failed to show who turned off the gas, but that it was turned off and not burning on the day of the accident until appellee lighted it, is not seriously disputed.

Appellee's presence at the scene of the accident came about through the brew master, Sosnowski, requesting him to light the burners at five o'clock Sunday evenning. Appellee's witness, Geriseweski, testified that "Sosnowski went into the cellar and I stayed with Luckowitz. Sosnowski was gone probably ten minutes. When he came back we had a glass of beer, and Sosnowski said to Luckowitz, 'John, will you do me a favor?' Mr. Luckowitz said 'Yes, what is it?' He

said, 'I want you to go into the cellar and light that gas along about five o'clock; it won't take you long, about a minute.' "  Before the brew master left he said to appellee, "You won't forget that, will you?"   (R. pp. 93-94.)   True to his promise, appellee went to the vat about five o'clock to light the burners in the stove. He first turned the gas cock in the wall, then put his head and shoulders into the vat, opened the valves in the stove and applied a match to each burner, resulting in the stove being put into condition to dry the varnish.   After blowing out the match and throwing it down in the cellar outside of the vat, he again put his head and shoulders into the vat to see whether the lights were still burning, when, without premonition from the odor of the gas, or other warning signal, a violent explosion occurred, injuring appellee severely. The temperature of the vat was maintained at one-half a degree above the freezing point.   It appears that seven per cent. of illuminating gas, when mixed with ninety-three per cent. of pure air at the temperature of the vat, is sufficient to cause an explosion.   It is conceded appellee was a gas-fitter with a good deal of experience with illuminating gas and in handling gas stoves, gas jets and gas stop cocks.

The declaration contains four counts, to which the general issue was interposed.   The first count avers that appellant negligently failed "to keep, maintain and provide a reasonably safe place for the plaintiff to work, but on the other hand, ordered and directed plaintiff to work about, within, near and by the said vat and gas stove, or appliances therein contained, which were at the time in an unsafe, dangerous and defective condition."   The second count, after averring the duty of appellant to keep and maintain a gas stove with its appliances in a reasonably safe condition, etc., charges that appellant regardless of such duty, carelessly and negligently failed to provide, keep and maintain the said gas stove or appliances in a reasonably safe condition, but on the other hand, care-

lessly allowed and permitted said gas stove or appliances to be and become and remain in an unsafe and unsuitable condition, so that by reason thereof gas was caused to and did escape and leak from and out of and through said gas stove or appliances, and by reason thereof gas was allowed to and did accumulate in said vat.'' The third count is drawn upon the theory that the negligence of appellant rested in failing to warn appellee of the dangers of lighting the stove. The fourth count charges that through appellant's negligence gas accumulated in the vat, and that thereby it had violated its duty in not furnishing appellee a reasonably safe place in which to work.

A trial before the Superior Court with a jury resulted in a verdict and judgment for. $10,000. At the conclusion of appellee's case and at the conclusion of all the evidence, motions to instruct a verdict and for a new trial were made by appellant and overruled, to which action of the court exceptions were duly preserved.

O. W. DYNES, for appellant.

DARROW, MASTERS & WILSON, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Fifteen assignments of error appear upon the record, but those urged in argument, and a consideration of which we deem sufficient to a disposition of this appeal, are embraced within the contention that the negligence charged is not sustained by the proof, and that the doctrine of *res ipsa loquitur* has no application under the averments of the declaration or under the proof.

It will be seen from the averments of the declaration that liability is grounded upon certain specific acts of negligence and upon the further contention that the master failed in his duty to furnish the servant with

a reasonably safe place in which to do the work he was engaged in doing at the time of the accident. In its ultimate analysis, in the conditions environing the place of the accident, the negligence charged is that gas was in the vat in sufficient quantity to cause an explosion; so that the liability, if any, arises either from negligence in allowing gas to leak into the vat in sufficient quantity to cause an explosion, or from negligence imputable to appellant from the fact of the presence of gas resulting in an explosion, and reasoning therefrom that the place in which appellee was working was therefore not reasonably safe. In support of these contentions counsel for appellee argue that "whether *someone* after five o'clock on Saturday put the stove out by stepping on the hose; whether *someone* tried to turn the gas off but did not tightly close the cock; whether the hose had become torn so that there was a leakage in the vat; whether the couplings were altogether tight, in consequence of which gas leaked into the vat; the fact remains that there was enough gas in the vat to produce an explosion." In the teeth of the fact that there was an entire absence of proof that any of the appliances specifically mentioned were in any manner defective, improperly constructed, impracticable for use in the service to which they were put, or out of repair to any extent, or leakage of gas into the vat, if such leakage there was, it follows that counsel must rely upon the doctrine of *res ipsa loquitur* as being sufficient, upon proof of the occurrence of the explosion with resulting injury, to entitle appellee to recover. If such contention is plausible, then the countervailing proof that the gas was not put out by stepping on the hose, because the hose would not collapse and shut off the gas if stepped upon, that the couplings were tight, that the cock was tightly closed, when appellee turned on the gas to light the burners in the stove, would be of no avail to relieve appellant from the liability imputable to it from the fact of the explosion, upon the theory that appellant

did not furnish appellee a reasonably safe place in which to work.

The duty of the master to use reasonable care in furnishing a reasonably safe place for his servant to work in, is too well settled to brook contradiction. It is a fast and firm principle of the law. Difficulties, however, often arise in the application of this legal principle to the particular facts of the case in which it is sought to be invoked. The evidence concededly establishes not only that illuminating gas has a pungent odor, but that there was no odor of gas in the vat either before or at the time of the explosion; nor was there anything else apparent indicating the presence of illuminating gas in the vat. So that it is clear that there was nothing to indicate to any of nature's senses that the vat was not a reasonably safe place in which to light the burners in the stove; nothing to make known the dangers to either master or servant. The rule is that before a servant can recover for injuries caused by defective appliances he must prove that the appliance was defective and in what the defect consisted; that the master had, or might have had in the exercise of ordinary care, notice of such defect, and that the servant neither knew of the defect nor had not equal means of knowledge with the master. Cook v. Medaris, 183 Ill. 288.

Appellee, by reason of his practical experience with gas and its appliances, not only had equal means of knowledge of conditions with the master, but means altogether superior, for in these matters he admits that he was well informed.

The duty of the master to furnish a reasonably safe place for the servant to work is fulfilled when he has used reasonable care in furnishing appropriate appliances which are ordinarily safe when properly used. The fact that machinery may be dangerous when improperly used, or that an accident happens to the servant in their use, is not a test of liability. As said in Smith v. Foster, 93 Ill. App. 140: "If the machinery

be of ordinary character and such as can with reasonable care be used without danger to the employe, it is all that can be required from the employer.''

We think the proof establishes that the appliances furnished were reasonably safe when operated with reasonable care. On the other hand, there is nothing in the proof establishing any want of care on the part of the appellant in selecting and maintaining the gas stove, the burners therein or the couplings, cocks, or rubber hose used for conducting gas into the stove, or in either of them, and this exculpates appellant from liability to appellee under the claim that he was not furnished a reasonably safe place in which to work. The crucial question is whether it can be legitimately inferred from the conceded safe condition of the appliances used in conducting gas to the stove in the vat, that the place in question was not a reasonably safe place for appellee to work. The burden of proving that it was not a safe place is upon appellee. He has not done so. Omaha Packing Company v. Murray, 112 Ill. App. 232.

In Texas & Pacific Ry. Co. v. Barrett, 166 U. S. 617, it was held that in an action against a railway company by an injured employe the burden of proof rests on the latter to show that the exploded boiler and engine were improper appliances to be used on the railroad, and that the boiler exploded by reason of the defects charged in the pleading. Huff v. Austin, 46 Ohio St. 386.

The duty imposed upon the master to furnish a safe place in which the servant may work does not mean anything more than an apparently reasonably safe place, providing due care is taken by the servant. The master is not a guarantor of safety. Western Stone Co. v. Muscial, 196 Ill. 382; Consolidated Coal Co. v. Scheller, 42 Ill. App. 619.

Whether the doctrine of *res ipsa loquitur* can be invoked in an action for personal injury between master and servant is immaterial to our decision of this case.

Neither by the averments of the declaration nor the proofs in the record is a case made, regardless of the relation of master and servant existing between the parties, which brings it within the doctrine of *res ipsa loquitur*.

It may still be regarded as an open question, or at least a doubtful one, whether in any well considered case the maxim *res ipsa loquitur*, in the restricted sense in which that maxim has received judicial interpretation, has literally been held as applicable to the relation of master and servant. Many expressions are, it is true, found in certain decisions which would lead, upon cursory examination, to the conclusion that the maxim was successfully invoked; but upon a more careful review, such opinions will disclose that while some of the elements of the maxim are of controlling importance, yet other considerations in an enlargement of and in addition to the rule which the maxim implies, entered as the turning point upon which such decisions are grounded. In other words, there is an essential and clear distinction as to the quantum of proof in passenger and carrier cases and those of master and servant involving claims for personal injuries. In a passenger case proof of the accident itself is all that is sometimes needed in the first instance in order to impose upon the carrier the burden of rebutting the negligence imputed to him by reason of the accident occurring; but in the case of a servant he must go one step farther before negligence is imputable to the master, requiring from him rebutting proof, as in a passenger case. In the case of a servant he cannot wholly rest his case on the assumption of *prima facie* proof flowing from the fact of the happening of the accident. He must go further and show at least some act of want of care which, with proof of the accident, will be sufficient to impute negligence to the master.

Channel v. Palmer Brick Co., 117 Ga. 106, and same case on second review, reported in 119 Ga. 857, is probably as extreme a case as can be found, extending

measurably at least the maxim of *res ipsa loquitur* to a case of master and servant. But it must be borne in mind in arriving at the exact import of the decisions in this case, that the state of Georgia has a civil code, and that section 2321, the court held, was "a sort of statutory application of the doctrine of *res ipsa loquitur*, since the statute raises a presumption of negligence from the mere happening of the injury." Yet the court held, notwithstanding the statute, that there was no absolute presumption of negligence in any case under the code; that in the case of a passenger, more than proof of the accident itself was needed. The court said, in 117 Ga., *supra*, "Even as to railroads primary proof that the injury was occasioned by the running of the locomotive, cars or other machinery of such company must be submitted before the presumption of negligence arise. * * * In all other instances the plaintiff must establish upon his part all of the facts necessary to show that the defendant is liable, the defendant not being called upon to make any defense until enough testimony has been introduced to show that it owed a duty to the plaintiff, that it negligently failed in its performance, and that in consequence thereof the plaintiff was damaged. Proof of the duty and injury are only parts of the plaintiff's case. The law raises no presumption whatever as to who was to blame. The burden is on plaintiff to show defendant was negligent. How this negligence is to be proved varies. It may be possible to bring direct evidence as to the cause of the injury and who was responsible therefor; or there may be some direct evidence of some facts, and circumstantial evidence as to others; or purely circumstantial evidence may, by itself, be sufficient to show that defendant was at fault. * * * There is, in neither of these instances, however, any presumption of law, but evidence on which the jury may reason and from which they may draw conclusions as to matters not directly proved. This inference is all of fact and not of law. It is to be reached

by the jury and not by the court. When from these facts an inference from negligence arises, it may be rebutted by the defendant like any other presumption arising from proofs submitted. Kaples v. Orth, 61 Wis. 535.''

Channel procured a reversal of the judgment directed against him at the conclusion of his proof, because there were facts in evidence tending to saddle upon the defendant the negligence charged, such as cracks, bulges and other defects in the arch, rendering it unsafe. Under these circumstances the jury might have found, as they afterwards did, that the master should have discovered these defects in the exercise of ordinary care, while the danger consequent upon their presence might not have been apparent to the servant, who was injured while obeying directions to work under the arch. On the second trial of the Channel case, *supra,* he recovered a judgment, and while much is said in the court's opinion about the applicability of the doctrine of *res ipsa loquitur* in affirming the judgment, still the rules announced in the preceding appeal were adhered to, the court holding that a general charge of negligence was insufficient, but specific acts constituting negligence must be averred and proved. The concluding section of the syllabi in case *supra* sufficiently indicates the standard of proof which the court required for sustaining the judgment. It is: ''In a suit of the character above indicated, evidence of the circumstances attending the transaction which resulted in the injury and constituting the *res gestae* of the occurrence, may be properly admitted, although such evidence may show other acts of negligence on the part of the defendant than the one alleged. But such evidence will not authorize a recovery unless the specific act of negligence alleged is established to the satisfaction of the jury.''

The sequence of such holding leaves no room permitting the invoking of the maxim *res ipsa loquitur* as being sufficient to impute negligence and thereby place

Eagle Brewing Co. v. Luckowitz.

the burden of rebuttal upon the master in an action for personal injury to his servant. Shearman & Redfield in discussing this question in their work on Negligence, vol. 1, sec. 59, say: "It is not that in any case negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of the defendant's duty and his neglect to perform it. The fact of the casualty and its attendant circumstances may themselves furnish all the proof of negligence which the injured person is able to offer or that it is necessary to offer."

This statement of the rule has been approved in many cases. Griffen v. Manice, 166 N. Y. 188.

This court denied, in Omaha Packing Co. v. Murray, 112 Ill. App. 233, that the rule of *res ipsa loquitur* could be availed of between master and servant. The judgment of the trial court was reversed for failure to give to the jury an instruction requested, by which they were told that before the plaintiff could recover he must establish by proof that the defendant was guilty of the negligence charged, resulting in his injury.

The case at bar is akin to Kranz v. White, 8 Ill. App. 585, which was an explosion case, where the servant sued the master for injuries resulting to him from the effects of the explosion. It was there held that while between the proprietor and a stranger injured in an explosion, proof of the occurrence was sufficient to establish a *prima facie* case and shift to the proprietor the burden of showing conditions sufficient to exculpate him from the negligence imputable to him because of the fact of the explosion, yet this rule had not been extended so as to apply to a servant operating the machinery. Earle v. Arbogast, 180 Pa. St. 409; Huff v. Austin, *supra.*

Counsel for appellee contend that this court in Mc-

Cormick v. Zakzewski, 121 Ill. App. 26, in terms recognized the rule of *res ipsa loquitur* as applicable to the case of an employe against his employer for personal injury. We do not so interpret our ruling in that case. That was a case where a lumber pile fell and injured the servant. But so far from the decision resting upon proof of the happening of the accident alone, it was both averred and proved that there was negligence in the improper construction of the lumber pile. We held that the testimony was complete in every particular, proving that the way in which the pile was stacked was dangerous, and consequently in fact negligence of the employer. The usual and ordinary methods were not followed in piling the lumber, but an unsafe method adopted. Diamond Glue Co. v. Wietzychowski, 227 Ill. 338. But as the Supreme Court reversed both these decisions, it is evident that the doctrine of *res ipsa loquitur* was not applicable.

It is often contended that every accident is the result of negligence attributable to some one. But there are exceptions to this assumption, notwithstanding it is more often true than otherwise. But there are many cases where an injury is a mere accident or casualty, for which, humanly speaking, no one is to blame. Certainly the evidence of appellee is lacking in that probative force sufficient to warrant an assumption that appellant was guilty of any negligent act which caused the explosion. The negligence charged has not been proven. The case of appellee rests upon surmise and conjecture, not only as to what elements caused the explosion, but through what human agency such elements were caused to be present making the explosion possible. As there were no defects in the appliances, it is patent that if the explosion resulted from illuminating gas escaping through the burners of the stove in the vat, it must have been brought about by some one turning on the gas when the stove was not lighted. Whether a fellow employe, or a

workman subject to appellee's orders, or the brew master, who was appellee's superior as the representative of appellant in the brewery, turned on the gas, the evidence fails to disclose.

Many other questions are argued, but in the view we take of the case they are not important to our decision, and as it would serve no useful purpose to discuss such remaining questions, we refrain from doing so.

It is evident that the judgment of the trial court is clearly contrary to the evidence, and equally apparent that the negligence charged is not sustained by the proofs. The judgment of the Superior Court is erroneous, and as we judge appellee submitted all the evidence procurable, which, with all legitimate inferences to be drawn from it, is insufficient to support a verdict and judgment, no benefit will result by remanding the case for another trial. Therefore the judgment of the Superior Court is reversed.

*Reversed.*